**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**The PRUDENTIAL INSURANCE COM-
PANY OF AMERICA, Defendant-
Appellee.**

No. 71–2110
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

May 31, 1972.

Rehearing and Rehearing En Banc
Denied July 18, 1972.

* ▮ Rule 18, 5th Cir.; see Isbell Enter-prises, Inc. v. Citizens Casualty Co. of New York et al. 5th Cir. 1970, 431 F.2d 409, Part I.

John L. Briggs, U. S. Atty., Jacksonville, Fla., Scott P. Crampton, Asst. Atty. Gen., Tax Div., Fred B. Ugast, Meyer Rothwacks, Crombie J. D. Garrett, Carolyn R. Just, Gary R. Allen, Attys., U. S. Dept. of Justice, Washington, D. C., for plaintiff-appellant; Aaron K. Bowden, Asst. U. S. Atty., of counsel.

Haywood M. Ball, Herman Ulmer, Herman Ulmer, Jr., Ulmer, Murchison, Ashby & Ball, Jacksonville, Fla., for defendant-appellee.

Before JOHN R. BROWN, Chief Judge, and INGRAHAM and RONEY, Circuit Judges.

RONEY, Circuit Judge:

The United States sued the defendant insurance company for the cash loan value of a life insurance policy to satisfy a tax lien against the owner of the policy, a delinquent taxpayer. Although the policy had a cash loan value on the date the Government served notice of levy, by the time the company was required by law to pay the levy, the policy by its terms had no cash loan value. Non-payment of premium had caused the policy to be automatically converted to term insurance with no cash loan value. Holding that the Government can recover only the policy's cash loan value, if any, at the time required for payment, and that it is not entitled to the amount of the cash loan value on the date of notice of levy, we affirm the judgment that the district court entered against the Government and for the insurance company.

This case is controlled by Section 6332(b) of the Internal Revenue Code, which provides a method by which the Government may, by levy, instead of foreclosure, obtain from an insurance company the cash loan value of a delinquent taxpayer's unmatured life insurance contract for the purpose of satisfying, in whole or part, an outstanding tax lien against the insured.[1] This is not a foreclosure action. Neither the Insured nor the policy beneficiaries have been joined as parties to the suit. The Government's case is bottomed squarely on Section 6332(b), which is the only statu-

---

1. 26 U.S.C.A. Section 6332(b) provides:
"(b) Special rule for life insurance and endowment contracts.—
(1) In general.—A levy on an organization with respect to a life insurance or endowment contract issued by such organization shall, without necessity for the surrender of the contract document, constitute a demand by the Secretary or his delegate for payment of the amount described in paragraph (2) and the exercise of the right of the person against whom the tax is assessed to the advance of such amount. Such organization shall pay over such amount 90 days after service of notice of levy. Such notice shall include a certification by the Secretary or his delegate that a copy of such notice has been mailed to the person against whom the tax is assessed at his last known address.
(2) Satisfaction of levy.—Such levy shall be deemed to be satisfied if such organization pays over to the Secretary or his delegate the amount which the person against whom the tax is assessed could have had advanced to him by such organization on the date prescribed in paragraph (1) for the satisfaction of such levy, increased by the amount of any advance (including contractual interest thereon) made to such person on or after the date such organization had actual notice or knowledge (within the meaning of section 6323(i) (1)) of the existence of the lien with respect to which such levy is made, other than an advance (including contractual interest thereon) made automatically to maintain such contract in force under an agreement entered into before such organization had such notice or knowledge.
(3) Enforcement proceedings.—The satisfaction of a levy under paragraph (2) shall be without prejudice to any civil action for the enforcement of any lien imposed by this title with respect to such contract."

tory authority for recovery of the cash loan value by levy.

The facts demonstrate the problem. On July 20, 1955, The Prudential Insurance Company of America issued a modified whole life policy insuring the life of Timothy F. Miese. On November 27, 1968, Miese was indebted to the Government for federal income taxes and notice of levy was served on Prudential. The cash loan value of the policy at that time was $1,827.88. The policy was not then in default nor was there any outstanding indebtedness against it. A copy of the notice of levy was mailed to the Insured. Under the statute, the levy was to be satisfied 90 days after service of the notice. Subsequently, before the end of the 90-day period, a premium payment required by the policy became due on December 20, 1968, but was not paid. On January 20, 1969, the 31-day grace period allowed by the policy came to an end and the policy went into default. The policy contained an automatic nonforfeiture clause under which the policy was automatically extended as paid-up term insurance for its face amount of $10,000.00 from the due date of the premium in default until July 31, 2002. The policy contained no other automatic nonforfeiture provisions. It specifically provided that the policy, in its extended form, would not have a cash loan value. Thus when the 90-day period expired on February 24, 1969, and the Government requested Prudential to pay to it the cash loan value of the policy, Prudential declined on the ground that the policy had lapsed for non-payment of premium during the 90-day period and that no cash loan value was payable under the policy.

These facts squarely present the issue of whether the Government was entitled under the law to the cash loan value of the policy on the date of the service of notice of levy, or the value the policy had 90 days thereafter, when payment was required.

Motions for summary judgment were filed by both parties. The district court denied the Government's motion and granted Prudential's motion, dismissing the case. United States v. Prudential Insurance Co. of Amer., 323 F.Supp. 201 (D.C.M.D.Fla.1971). From the district court's dismissal, the Government appealed.

■ Our decision in favor of the insurance company is based on the clear language of Section 6332(b). The levy under paragraph (1) constitutes a demand for payment of the amount described in paragraph (2). The amount is there described as "the amount which the [taxpayer] . . . could have had advanced to him [by the insurance company] . . . on the date prescribed in paragraph (1) for the satisfaction of such levy." Going back to paragraph (1), it clearly prescribes the date for satisfaction as "90 days after service of notice of levy." Simply stated, the statute thus provides that the levy constitutes a demand for the amount of money which the Insured could have advanced to him under the terms of the policy 90 days after the notice of levy is served on the insurance company. Applying the plain meaning of this statute to the facts of this case: Notice of levy was served on November 27, 1968. Ninety days thereafter was February 25, 1969. The taxpayer could not have had any money advanced to him on that date under the terms of the policy. Since that is the only amount provided in the statute for payment to the Government, it is not entitled to any other amount. To reach a different result would require us to either rewrite the statute, or rewrite the policy. Neither of these alternatives is available to us. Had Congress squarely confronted the particular terms of this policy, it might well have made a different provision to enable the Government to recover. But the defendant is entitled to have the statute applied as it was written, not as it could have been or should have been written, nor even as Congress might have intended to write it. Where the words and meaning of a statute of this kind are clear, there is no room for judicial consideration of Congressional intent. Gemsco, Inc. v. Wall-

ing, 324 U.S. 244, 65 S.Ct. 605, 89 L.Ed. 921 (1944).

The Government would have us find the statutory language to be ambiguous and reach a contrary result with the aid of legislative history. However, even a study of this history does not convince us that Congress intended to alter in any way the automatic contractual provisions of the policy.

*The Law Prior to the 1966 Amendment*

Prior to the addition to the Code of Section 6332(b), in order to make any recovery from a life insurance policy of a taxpayer, the Government was required to proceed by a foreclosure suit against the Insured's total rights in the contract. The courts had consistently held that a tax levy, by itself, could not reach the cash loan value or cash surrender value of an insurance policy. This result was based on the ground that the right of the Insured to demand the payment of such values was not included in "the definition of the property possessed and obligations existing at the time" of the levy within the meaning of 26 U.S.C. § 6331(a) and (b), the sections of the Code which authorized the Government to collect taxes by levy. United States v. Mitchell, 349 F.2d 94 (5th Cir. 1965); United States v. Sullivan, 333 F.2d 100 (3rd Cir. 1964). Unless and until the Insured made a demand for all or part of the cash surrender or loan value, there was nothing to which a lien or levy could attach under those sections. United States v. Penn Mutual Life Ins. Co., 130 F.2d 495 (3rd Cir. 1942); United States v. Home Life Ins. Co., 355 F. 2d 86 (2nd Cir. 1966).

Foreclosure proceedings created problems for both the Government and the Insured. The Government by such action was not permitted to recover the amount of the cash surrender or cash loan value at the time of its levy but was relegated to the recovery of only the cash surrender value on the date of judgment. The rationale was that the lien and levy did not vitiate the contractual obligations and rights of the insurance company and the Insured pending final judgment. On the other hand, all of the Insured's rights in the contract were terminated if the Government succeeded in its foreclosure action. The Insured might be then uninsurable, advanced age might bring increased premiums on new insurance, or other problems could develop which would impose harsh penalties on beneficiaries and family, beyond those necessary to meet the needs of the Government.

*The 1966 Amendment*

Mindful of these problems in the foreclosure procedure, Congress enacted Section 6332(b) by Section 104(b) of the Federal Tax Lien Act of 1966. See: House Committee Report at H.Rep.No. 1884, 89th Cong., 2d Sess. (1966–2 Cum.Bull. 825); S.Rep.No.1708, 89th Cong., 2d Sess. (1966–2 Cum.Bull. 888).

Section 6332(b) provided special rules for a levy on insurance companies with respect to the life insurance of delinquent taxpayers. It allowed the Government to obtain the cash loan value of an Insured's policy without either instituting foreclosure proceedings or surrendering the policy. By proceeding under Section 6332(b) the Government would, in effect, be "exercis[ing] . . . the right of the person against whom the tax is assessed to the advance of such [cash loan value]." It left the taxpayer all other rights in the policy, including the right to maintain the policy in force, subject to the debt. Thus, there evolved a very simplified procedure for satisfying tax delinquencies of persons with life insurance contracts to the extent of the cash loan value, advantageous both to the Government, which did not have to see the asset dwindle in amount during foreclosure proceedings with no benefit to the Insured, and to the Insured and his family, who could retain the benefits of the insurance.

*The Levy*

The Government contends that the notice of levy served on the insurance company constituted an exercise of the tax-

payer's right to demand and receive payment of the cash loan value, and that this cash loan value was effectively seized on the date of the levy. It virtually argues that the demand created an obligation on the part of the insurance company subject to levy under Section 6331(a) and (b).[2] Even if there were merit to the argument that Section 6332 is not a complete code on the subject of the collection by the Government of the cash loan value of insurance policies, and that it must be read in conjunction with Section 6331, the Government overlooks the fact that the obligation of the insurance company subject to levy was not to pay the cash loan value on the date of the levy but to pay the amount specifically limited by Section 6332. That section provides that the demand is for "the amount described in paragraph (2)," which paragraph clearly delineates the amount as that which the Insured could obtain from the company 90 days after the notice of levy. The obligation on the part of the insurance company could be no greater.[3] The Government levy could seize no more than the amount which the Insured could require by such a demand under the policy.

### The Policy

Upon default in premium payment for 31 days, the Prudential policy by its terms was converted from modified whole life to paid-up term insurance effective on the due date of the premium.[4]

2. 26 U.S.C.A. Section 6331 provides:
"Levy and Distraint
"(a) Authority of Secretary or delegate.—If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary or his delegate to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax. Levy may be made upon the accrued salary or wages of any officer, employee, or elected official, of the United States, the District of Columbia, or any agency or instrumentality of the United States or the District of Columbia, by serving a notice of levy on the employer (as defined in section 3401(d)) of such officer, employee, or elected official. If the Secretary or his delegate makes a finding that the collection of such tax is in jeopardy, notice and demand for immediate payment of such tax may be made by the Secretary or his delegate and, upon failure or refusal to pay such tax, collection thereof by levy shall be lawful without regard to the 10-day period provided in this section.
(b) Seizure and sale of property.—The term 'levy' as used in this title includes the power of distraint and seizure by any means. A levy shall extend only to property possessed and obligations existing at the time thereof. In any case in which the Secretary or his delegate may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible)."

3. The time for computation of the amount was acknowledged by the insurance company on December 6, 1968, when it wrote the United States Treasury Department as follows:
"Notice of Levy concerning the above taxpayer and policy was served on us November 27, 1968. The net cash loan value of this policy 90 days from said date provided it is kept in force by the payment of any premiums falling due, will be $1,866.17."

4. The non-forfeiture provisions provide in pertinent part:
"Extended Insurance. In event of default in payment of premium for more than thirty-one days, the face amount of insurance, reduced by an amount equal to any existing indebtedness on this Policy and increased by the amount of any existing paid-up dividend additions on this Policy, will be automatically continued from the due date of the premium in default as paidup term insurance for such term as the present value, as of the due date of the premium in default, of the extended insurance in accordance with the Table of Loan and Non-forfeiture Values, less any existing indebtedness on this Policy, plus the then present value of any existing paid-up dividend additions together with any other dividend credits existing on this Policy, will provide at

There was no choice in the policy. The conversion was automatic.

Although Section 6332(b) (2) does not permit the cash loan value to be reduced by any advance to the Insured after notice of levy, the statute contemplates a reduction for advances "made automatically to maintain such contract in force under an agreement entered into before such [insurance company] had such notice or knowledge." Thus Congress recognized the continued viability of automatic provisions of the contract and the right of the insurance company to be protected thereby. The Government argues that this can be used only to keep the whole-life insurance contract in force. However, there is but one contract, complete in itself, and the automatic provisions take effect without action on the part of either party to the insurance agreement.

Although the Government makes strong arguments to the contrary, there appears no authority or reason to believe that Congress intended to permit the Government a better position under the policy than that to which the taxpayer was entitled by the specific terms of the policy.

■■■ The district court did not err in holding that (1) Section 6332(b) requires that the amount of the cash loan value of a life insurance contract required to be paid to the Treasury by the insurance company be computed as of the date 90 days after the date of the service of notice of levy, (2) the automatic continuation of the policy as paid-up term insurance constituted an advance made automatically to maintain in force the contract which was entered

into before Prudential had notice or knowledge of the tax lien with respect to which the levy was made, and (3) on the 90th day, by reason of the automatic extension of insurance clause which came into operation during the 90-day period, the policy had no cash loan value, and that therefore, there was no amount payable to the Treasury by Prudential pursuant to the service upon Prudential of the notice of levy under Section 6332(b) of the Code.

Affirmed.

JOHN R. BROWN, Chief Judge (dissenting):

The Court concludes that the tax collecting power of the Federal Government has been effectively thwarted by a private contractual arrangement between a taxpayer and his insurance company. Primarily because of the opinion's carefully reasoned and articulate analysis of the problem, that result is admittedly very persuasive. Nevertheless, I am convinced that it is not the result which Congress intended and which a proper construction of § 6332(b) should entail.

Initially we should remember that the derivation of statutory meaning is not an abstract lexicographical exercise, no matter how clear and unambiguous the written manifestation of the legislature's collective will.[1] "Examples are legion where literalness in statutory language is out of harmony * * * with an Act taken as an organic whole." Oestereich v. Selective Service System, 1968, 393 U.S. 233, 238, 89 S.Ct. 414, 417, 21 L.Ed.2d 402, 406. What might otherwise be a perfectly reasonable, common-sense interpretation of superficially

---

net single premium term insurance rates at the attained age of the Insured. The extended insurance shall not include any additional benefit in event of death by accidental means."

1. "There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of

the legislation. In such cases we have followed their plain meaning. * * * Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' this Court has followed that purpose, rather than the literal words." United States v. American Trucking Associations, 1940, 310 U.S. 534, 543, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345, 1350–[1351] (footnotes omitted).

plain language must be rejected when adopting it would frustrate or defeat the obvious Congressional purpose which the statute was designed to effectuate. Perry v. Commerce Loan Co., 1966, 383 U.S. 392, 399–400, 86 S.Ct. 852, 856, 15 L. Ed.2d 827, 833; Markham v. Cabell, 1945, 326 U.S. 404, 409, 66 S.Ct. 193, 195, 90 L.Ed. 165, 168. Here the consequence of a literal reading is to nullify the law.

If the Court's interpretation is correct there appear to be at least three situations in which the Government will be unable to collect from the insurance company because of intervening events arising during the 90-day grace period following service of the notice of levy, two of which are wholly within Taxpayer's control: (i) when the policyholder dies, (ii) when he assigns the policy to someone else, and (iii) when he purposefully allows the policy to lapse knowing that from the viewpoint of his beneficiaries substantially the same protection is available through paid up or extended insurance. In none of these events will he be entitled to the advance of all or any portion of the policy's cash loan value on the 90th day. This result is particularly anomalous because one of the purposes served by the 90-day period is to provide taxpayers with an opportunity "to continue the policy in force by transferring it to either a beneficiary or someone else who pays the subsequent premiums and interest on policy loans, including those loans resulting from the Government levy." S.Rep.No.1708, 89th Cong., 2d Sess. (1966–2 Cum.Bul. at 888). It hardly seems plausible to suppose that Congress has also provided a taxpayer with a gratuitous 90-day option to defeat the Government's lien altogether by means of a unilateral action wholly within his own control. "No rule of construction necessitates our acceptance of an interpretation resulting in patently absurd consequences." United States v. Brown, 1948, 333 U.S. 18, 27, 68 S.Ct. 376, 381, 92 L.Ed. 442, 449.

Moreover, even if we are somehow compelled to discover ambiguity in §

6332(b) in order to avert the disaster of a literalistic construction, I believe we can find an abundance of it. Paragraph (2) provides: "Such levy shall be deemed to be satisfied if such organization pays over to the Secretary or his delegate the amount which the person against whom the tax is assessed could have had advanced to him by such organization *on the date prescribed in paragraph (1) for the satisfaction of such levy.*" The problem is, what does the italicized language modify? If the statute is syntactically flawless, as the Court assumes, the reference is to the word "amount," so that the sentence means "the amount which * * * could have [been] advanced * * * on the date prescribed in paragraph (1)." However, if this language refers to the word "pays" and merely reaffirms the *time* for the satisfaction of the levy, the sentence should read as follows: "Such levy shall be deemed to be satisfied if such organization, on the date prescribed in paragraph (1) for the satisfaction of such levy, pays over to the Secretary or his delegate the amount which the person against whom the tax is assessed could have had advanced to him by such organization."

Given these two alternatives we should adopt the second one, since paragraph (1) states that a levy constitutes "the exercise of the right of the person against whom the tax is assessed to the advance of such amount," while § 6331(b) provides that "a levy shall extend * * * to property possessed and *obligations existing* at the time thereof" (emphasis added). If the Court's interpretation were correct, this language—as applied to a levy under § 6332(b)—must be construed to mean " * * * to property possessed and obligations existing 90 days after service of the notice of levy." Apart from the inconsistency resulting from the *implicit* assumption that Congress has prescribed two fundamentally different kinds of levies—those immediately operative and those having only prospective effect—it is almost inconceivable to suggest that here the Government has exercised a nonexistent right

and levied against a nonexistent obligation. Since the service of the notice of levy amounted to an exercise of the taxpayer's right to payment of the cash loan value under the terms of the policy, the value on the date of service should be controlling, notwithstanding the fact that the insurance company's obligation to pay that amount is generally to be deferred for 90 days.[2]

Even if the Court is correct in asserting that the Government's levy extends only to that amount which the taxpayer *could have had* advanced to him on the 90th day, there is no reason to conclude that he was entitled to nothing. The policy surely had some economic value. Cf. Commissioner of Internal Revenue v. Chase Manhattan Bank, 5 Cir., 1958, 259 F.2d 231, cert. denied, 1959, 359 U.S. 913, 79 S.Ct. 589, 3 L.Ed.2d 575. This would also include the policy's entire cash loan value at that time if he had reinstated the original whole life policy by paying the overdue premium. The fact that the premium was not actually paid is irrelevant.

In any event the question here is simply whether a taxpayer—by volitional, unilateral acts—may successfully avoid satisfaction of a pre-existing Federal income tax liability by exchanging a particular property interest which has already been appropriated for the use of the United States Treasury for another kind of property interest having substantial, if not equivalent, value, but not realizable except on the contingency of death. I would hold that he may not.

2. The legislative history of § 6332(b) clearly states that "where the Government levies on the cash loan values of the contract, the insurance company generally must pay *this* cash loan value over to the Government 90 days after the levy." S. Rep. 1708, *supra*, 1966–2 Cum.Bul. at 888. Moreover, Temporary Treas.Reg. § 400.3–1(b) (1) (ii) provides that "no event during the 90-day period subsequent to the date of service of the notice of levy shall release the cash loan value from the effect of the levy. For example, the

## ON PETITION FOR REHEARING AND PETITION FOR RE-HEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

termination of the policy by the taxpayer or by the death of the insured during such 90-day period shall not release the levy."

Of course, the regulation is invalid if it is inconsistent with the terms of the statute. But under the circumstances here it should be controlling. Bingler v. Johnson, 1969, 394 U.S. 741, 750, 89 S.Ct. 1439, 1445, 22 L.Ed.2d 695, 703–704; Commissioner of Internal Revenue v. South Texas Lumber Co., 1948, 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831, 836.