**Asberry L. FEARS et al., Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**Civ. A. No. C74–858A.**

United States District Court, N. D. Georgia, Atlanta Division.

Jan. 13, 1975.

**1224**

Charles L. Weltner, Atlanta, Ga., for plaintiffs.

William D. Mallard, Jr., Asst. U. S. Atty., Atlanta, Ga., for defendant.

## ORDER

JAMES C. HILL, District Judge.

This is an action instituted for the refund of certain taxes paid by plaintiffs in connection with their employment by the Seaboard Coast Line Railroad. It is alleged that, prior to January 31, 1974, all of the plaintiffs were employed by the railroad, and that they each paid the employee's taxes under the Railroad Retirement Tax Act, Int.Rev.Code of 1954, secs. 3201–3233. After that date plaintiffs were employed by the Pine Tree Corporation which is not subject to the provisions of the Railroad Retirement Tax Act, but, rather, is subject to the provisions of the Federal Insurance Contributions Act (FICA), Int.Rev.Code of 1954, secs. 3101–3126. Each of the plaintiffs was employed by the railroad for less than ten years, and thus, is not entitled to benefits under the Railroad Retirement Plan. Employees retiring or dying with less than ten years creditable railroad service must look to the Social Security System for benefits. 45 U.S.C. secs. 228b(a), 228e(l)(1), (7), and (8). The railroad employment at the time of retirement or death is credited to the employee's Social Security account in order to determine entitlement to benefits under Social Security. 45 U.S.C. sec. 228e(k)(1).

Plaintiffs' claim is based on the fact that the tax paid under the Railroad Retirement Act is higher than that paid under FICA. Since benefits will be paid to the plaintiffs under the Social Security System, they feel that they are entitled to a rebate of any taxes paid under the Railroad Retirement Act to the extent that they exceed the amount they would have paid had they been paying under FICA throughout their working years. Plaintiffs allege that benefits under Social Security are lower than benefits under the railroad system.

The case is now before the Court on the government's motion to dismiss as to two of the plaintiffs, and on the government's motion for summary judgment as to the rest. There appears to be no controversy as to any material issue of fact.

## I. MOTION TO DISMISS.

The government moves to dismiss this case insofar as it is brought by plaintiffs Charlie Arline and Asberry L. Fears because these plaintiffs have not satisfied the jurisdictional prerequisites of filing a claim for refund as prescribed by Int.Rev.Code of 1954, secs. 6511(a) and 7422. Plaintiffs oppose this motion on the ground that there is no statutory or regulatory form for requesting a refund for the taxes in question. Therefore, they contend, these plaintiffs should not be held to any rigid formalism.

The Court agrees with plaintiffs that they should not be held to any rigid formalism, and that the main purpose of requiring a party to file a refund claim before allowing a suit for a refund, is to give the government fair notice of the existence of a claim and the identity of the claimant. The record, however, shows that the Internal Revenue Service received from plaintiffs' counsel on December 13, 1972, "A Claim for Refund of Taxes Excessively Collected" in the name of all of the present plaintiffs except Mr. Fears and Mr. Arline. The first indication that the government had of a claim by these two plaintiffs was after April 6, 1973, when it received power of attorney forms from them as well as the rest.

Assuming then, but not deciding, that these power of attorney forms were sufficient to be considered claims for refund, they were received more than two years after the date that the taxes were paid. Section 6511(a) requires the claim to be made within two years, therefore, any notice that the government had of the claims of these two plaintiffs was not timely.

Accordingly, the government's motion to dismiss as to plaintiffs Asberry L. Fears and Charlie Arline is GRANTED.

## II. SUMMARY JUDGMENT.

### (a) *Fairness.*

This is a case of first impressions where plaintiffs base their entire claim on the fact that the retirement tax they paid while employed by the railroad was substantially more than the FICA tax they now pay, and that the benefits they will receive under Social Security will be substantially less than they would have received under the Railroad Retirement Act. They candidly state that there is no decided case or other authority touching upon the relief they seek. However, they invoke as the ultimate controlling authority, the fundamental principal of fairness, and it is appealing, for it is the paramount duty of the Court to be fair. Plaintiffs say,

in their brief, that: "Having paid for twice as much coverage as each plaintiff now would be entitled under Social Security, honesty and fair play require that the excess contribution be refunded . . . ."

Perhaps, therefore, it would not be improper to explore in some depth the correct application of the Court's unquestioned duty to be fair in our system. Plaintiffs' premise appears to be that the Court should decide just what it is that fairness requires of the citizens of our country and see to it that each is treated according to such a decision. At first blush it is an appealing approach. But when subjected to just cursory analysis, the premise is found dangerously lacking in understanding of the fundamental structure of our constitutional system.

There are three branches of the federal government. Each is, of course, enjoined to be fair in the discharge of the powers and responsibilities entrusted to it. Individual occupants of positions within the separate branches occasionally utter unofficial denunciations of what they feel to be grossly unfair actions of another branch. However, the affairs of the nation require that each branch act upon the assumption that the other has acquainted itself with all pertinent arguments touching upon fairness and that its final acts have resolved them satisfactorily. We assume the fairness of the end product of the deliberations of each other branch while searching for fairness in our own sphere.

Thus, the judiciary must, if the system is to survive, accept the acts of the legislative branch as being unassailably fair, while being under a sacred duty to apply those acts fairly to litigants.

Thus, when probed only superficially, it is apparent that plaintiffs' invocation of "fairness" as authority for this action is drastically circumscribed by our constitutional system. It is bed-rock fundamental theory that the Court must be fair in the *application* of the law; the Court must accept the Congressional

determination that the law has been fairly enacted.[1]

The legislative branch enacts the tax laws. The sympathy of this Court goes out to those who must exercise that power. In no area of government is there heard more protests of unfairness than in the area of taxation. All who are taxed are vexed; those who see themselves as paying for more than they receive denounce the "unfairness" of that result.

Our graduated income tax exacts a greater percentage of the earnings of some than others. Fairness has been cited in many ably presented attacks upon that system.[2] Alcoholic beverages are taxed at rates exceeding those, if any, applied to other beverages. Gasoline is taxed at rates different from those imposed upon other forms of energy. All citizens are taxed for the support of schools whether they be parents of school age children or not. Indeed, the tax imposed under the Social Security Act has often been called unfair. Those whose earnings result in taxation at the maximum level pay, over their productive years, many times more than the cost of a commercial annuity exceeding Social Security benefits. Some earners pay far less than the actuarial value of the benefits received.

Congress has enacted these laws. Congress, not the Courts, bears the responsibility for establishing the rules of taxation, and as long as Congress has acted within its constitutional powers, the Courts cannot use broad powers to frustrate specific statutory language. Supreme Investment Corporation v. United States, 468 F.2d 370 (5th Cir. 1972).

### (b) *Due Process.*

Plaintiffs have neither alleged nor argued in their brief opposing the government's motion that the taxes in question violate any constitutional rights afforded the plaintiffs. The Court, though, feels that it is necessary to discuss this aspect. It is necessary, on a motion for summary judgment, to construe the plaintiffs' complaint most favorably towards the plaintiffs and to deny summary judgment if the undisputed facts do not negate any right of recovery that might be included in the complaint. Paler v. Columbia Broadcasting System, 368 U.S. 767 (1944); Palmer v. Chamberlain, 191 F.2d 532 (5th Cir. 1951).

Congress does not have an unlimited right to tax the citizenry. A federal statute passed under the taxing power may be so arbitrary and capricious as to cause it to fall before the due process of law clause of the Fifth Amendment. Heiner v. Donnan, 285 U.S. 312, 326, 52 S.Ct. 358, 76 L.Ed. 772 (1932); Neild v. District of Columbia, 71 U.S.App.D.C. 306, 110 F.2d 247 (1940). As the Court of Claims stated in Lionberger v. United States, 371 F.2d 831, 837, 178 Ct.Cl. 151 (1967):

> "Unconstitutionality [of a tax measure] derives neither from unequal imposition nor from unequal incidence, but rather from that special instance where the act is 'so arbitrary as to compel the conclusion that it does not involve an exertion of the taxing power, but constitutes, in substance and effect, the direct exertion of a different and forbidden power, as, for example, the confiscation of property.['] Magnono Co. v. Hamilton, 292 U.S. 40, 44, 54 S.Ct. 599, 601, 78 L.Ed. 1109 (1934)."

█ █ It is no constitutional defense to a tax that the taxpayer is not directly benefited from the tax or is less benefited than others who pay the same or less tax. Kelly v. Pittsburgh, 104 U.S. 78, 26 L.Ed. 658 (1881). The fact of living in an organized society carries with

---

1. The Congressional determination, of course, is limited by constitutional restraints. Marbury v. Madison, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803). The Court will discuss the constitutional implications later in the body of the order.

2. *E. g.*, W. Buckley, Four Reforms—A Guide for the Seventies, pp. 47–71.

it the obligations to contribute to its general welfare, whether or not the recipient of a particular benefit. Morton Salt Co. v. South Hutchinson, 159 F.2d 897 (10th Cir. 1947).

We are considering here taxes withheld to support a social welfare program, and the due process clause of the Fifth Amendment "can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification." Flemming v. Nestor, 363 U.S. 603, 611, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960). Benefits under Social Security flow from the contributions a worker makes to the system while actively employed, but are not dependent on the degree to which he was called upon to support the system by taxation. Flemming v. Nestor, *supra.*

The test to use to determine constitutionality was set out by the Supreme Court in Richardson v. Belcher, 404 U.S. 78, 81, 84, 92 S.Ct. 254, 257, 30 L.Ed.2d 231 (1971).

"A statutory classification in the area of social welfare is consistent with the Equal Protection Clause of the Fourteenth Amendment if it is 'rationally based and free from invidious discrimination.' Dandridge v. Williams, 397 U.S. 471, 487, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491. While the present case, involving as it does a federal statute, does not directly implicate the Fourteenth Amendment's Equal Protection Clause, a classification that meets the test articulated in *Dandridge* is perforce consistent with the due process requirement of the Fifth Amendment. * * *

"If the goals sought are legitimate, and the classification adopted is rationally related to the achievement of those goals, then the action of Congress is not so arbitrary as to violate the Due Process Clause of the Fifth Amendment."

Within constitutional limitations, there is no equity in tax law. Estate of Dupree v. United States, 391 F.2d 753 (5th Cir. 1968). The Fifth Circuit stated in Commissioner v. Dodd, 410 F.2d 132, 134 (5th Cir. 1969):

"The taxpayers argue that it is unfair and inequitable to allow deduction of unreimbursed moving expenses incurred after 1963 but to deny those incurred during or before 1963. The answer is that the tax law is statutory and equitable considerations are inapplicable. Estate of Dupree v. United States, 5 Cir. 1968, 391 F.2d 753; Carlton v. United States, 5 Cir. 1967, 385 F.2d 238."

The Court will now turn to the specific classifications made by Congress in the taxes under consideration, keeping in mind that Congress has wide discretion in making classifications, and that such classifications will only be held invalid where they are invidious and wholly devoid of any reasonable justification. Shanahan v. United States, 447 F.2d 1082 (10th Cir. 1971).

Plaintiffs are members of the class of people who, having worked for an employer covered under the Railroad Retirement Act, leave that employment with less than ten years of creditable service. The so-called "Douglas Amendments" in 1951 to the 1937 Act altered the law so that a railroad benefit was payable only if the employee had completed ten years of railroad employment. The ten year vesting period is consistent with the idea that the railroad retirement system was designed as a staff retirement system for railroad career employees which would provide a benefit commensurate with the worker's lifetime earnings history in the industry, weighted by the number of years of railroad employment. There are a number of justifications for the ten year vesting period and the transfer of non-vested employees to Social Security.

1. The Transfer of non-vested workers to Social Security benefits the Railroad Retirement Account, and helps to finance increased benefits to career railroad employees.

2. The benefit increase is passed on to the career railroad employee, for whom the system had been founded.

3. Short-service employees who retired prior to 1951 under railroad retirement and/or social security paid taxes which were insufficient to cover benefit payments under either system, thereby resulting in a drain on the Railroad Retirement Account.

4. Those railroad employees who are transferred to Social Security coverage are guaranteed that benefits accruing to them and their survivors would at least equal the total of their railroad retirement taxes.

5. Although he pays higher tax rates, the non-vested railroad worker whose credits are transferred to Social Security becomes, then, potentially entitled to greater retirement benefits from Social Security than he would have from the railroad retirement system. The Social Security formula is socially weighted and pays a relatively high benefit for a worker with low years of service and average wages. The railroad retirement system formula, which had originated as primarily a staff retirement plan, is almost directly related to years of service and compensation, and therefore has very little social weighting.

It is difficult to see that plaintiffs have any justification for their contention that, because they have paid a higher rate under the Railroad Retirement Plan than their counterpart under Social Security, there is any "invidious discrimination." Since benefits under Social Security do not depend on an employee's contributions to the program, but rather on the earnings record of the primary beneficiary, Flemming v. Nestor, *supra,* an employee's social security account is credited for the number of years the employee worked for the railroad and not the amount of money he paid into the Railroad Retirement Plan.[3]

Further, realizing that a former railroad employee may have paid more into a government retirement plan than his non-railroad counterpart, Congress has guaranteed that a non-vested railroad employee will recover in Social Security benefits at least the amount of taxes he paid under the Railroad Retirement Tax Act. Thus, a residual lump sum benefit is provided by 45 U.S.C. sec. 228e(f)(2) equalling the difference between an amount somewhat higher than the employee-paid taxes under the Railroad Tax Act and the benefits received under the Social Security System. An employee who is covered by Social Security throughout his productive life has no such guarantee.

It should be noted also that the Railroad Retirement System, is in a form somewhat similar to a pension plan. It is quite common for a pension plan to require a person to make contribution for a number of years before that person is vested with any rights under the plan. Social Security is a social insurance system, where the benefits are not directly related to contributions. Congress was under no obligation to credit a non-vested railroad employee's Social Security Account when the employee left the employ of the railroad. It did so in order to assist the non-vested railroad employee to qualify for Social Security benefits, and thus alleviate some apparent inequities.

3. It may be that plaintiffs conceive Social Security as being like unto the purchase, by premiums (taxes) of an annuity (social security benefits) in the insurance world. Unless the Court misreads the Social Security law, such would be a misconception. The taxes exacted under Social Security are not invested to provide future benefits for the worker paying the taxes; they are used to pay the benefits *currently* provided by law for those currently entitled to receive benefits. What benefits the plaintiffs may ultimately receive under Social Security depends not upon their current, past or future payments. They will be determined by the benefits provided at that future date by the Social Security Act then in effect and will then be paid by taxes then imposed to raise revenue with which to pay those benefits. Such a possible misconception is found in plaintiffs' premise that, "Having paid for twice as much coverage as . . . plaintiff . . . would be entitled under Social Security, . . . ."

The Court finds nothing in plaintiffs' case that would warrant a finding that the tax as applied to them is unconstitutional. Even if plaintiffs could argue that it is unfair that they have paid more taxes for retirement than their non-railroad counterpart, constitutional issues affecting taxation do not turn on even approximate mathematical determinations. Mullaney v. Anderson, 342 U.S. 415, 72 S.Ct. 428, 96 L.Ed. 458 (1952). The burden to show unconstitutionality is upon the plaintiffs. Mullaney v. Anderson, *supra.* Although in some respects there may be a certain unfairness to their plight in the eyes of the plaintiffs, it must be remembered that:

> "When a legislature chooses to inaugurate [sweeping social reform] it is often compelled to make compromises which, whether in the name of politics or economy, are often difficult to explain in strictly legal terms. (citations omitted) As a result, the judiciary has expressed a reluctance to inquire too deeply into the policy considerations underlying such legislation, and the role of equal protection in the area of economics and social welfare has traditionally been limited. *See e. g.* Richardson v. Belcher, 404 U.S. 78, 81, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971); Dandridge v. Williams, supra, 397 U.S. [471,] at 485, 90 S.Ct. 1153, [25 L.Ed.2d 491] (1970)."

Von Stauffenberg v. District Unemployment Compensation Board, 148 U. S.App.D.C. 104, 459 F.2d 1128, 1130 (1972).

In conclusion, the Court finds no merit in plaintiffs' claim that they are due a refund in the name of "honesty and fair play." Nor does the Court find any constitutional prohibition in Congress' treatment of railroad employees with less than ten years of railroad service. Since there is no question of material fact, and it is the conclusion of the Court, as a matter of law, that plaintiffs are not entitled to a rebate of the taxes they claim were unlawfully assessed against them, the defendant's motion for summary judgment as against all plaintiffs (except Asberry L. Fears and Charlie Arline dealt with in Section I herein) is granted.