**UNITED STATES of America, Plaintiff,**

v.

**EQUITABLE LIFE ASSURANCE CO. OF the UNITED STATES, Defendant.**

**No. 75 Civ. 2198.**

United States District Court, S. D. New York.

Dec. 30, 1977.

Robert B. Fiske, U. S. Atty. for the Southern District of New York, New York City, by William Roche Bronner, Asst. U. S. Atty., New York City, for plaintiff.

Werner Weinstock, New York City, by Michael W. Brody, Robert L. Rose, Robert J. Miller, New York City, for defendant.

## OPINION UPON RECONSIDERATION

GRIESA, District Judge.

### I

This is a tax collection action brought pursuant to Sections 6332(c)(1) and 7401 of

the Internal Revenue Code of 1954, *as amended*, 26 U.S.C. §§ 6332(c)(1), 7401. The Government claims that Equitable failed to honor a levy pursuant to Section 6332(b) of the Code, 26 U.S.C. § 6332(b), upon the interest of a taxpayer in his life insurance policy.

The Government moves for judgment on stipulated facts. Equitable moves to dismiss the complaint for failure to state a valid claim. It is agreed that the sole issue to be determined by the court is one of law, and that there are no factual issues to be tried.

On February 25, 1976 I issued an opinion denying the Government's motion, granting Equitable's motion, and dismissing the complaint. On March 24, 1976 I granted the Government's motion to reopen the case and reconsider the motions.

Upon reconsideration, I adhere to my original ruling and dismiss the action.

A taxpayer by the name of John C. Hill was the owner of an insurance policy issued by Equitable. Hill had tax deficiencies assessed against him on September 18, 1970 and October 1, 1971. On September 20, 1972 the Government served a notice of levy on Equitable with respect to Hill's interest in his insurance policy. Hill was notified of this levy. As of the date of the levy, the cash loan value of the policy was $1,475.00—an amount less than Hill's tax deficiencies.

Under the relevant statute Equitable had 90 days—*i. e.*, until December 20, 1972—before it was required to satisfy the levy. An insurance premium owed by Hill came due on October 12, 1972. Hill did not pay the premium on that date or at any subsequent time. Under the terms of the policy, there was a 31-day grace period, at the expiration of which the policy lapsed. The policy thus lapsed on November 12, 1972.

The policy included a provision, "Options on Lapse," which had the effect that within three months of the date of default, October 12, 1972, Hill could elect to surrender the policy for its net cash value or convert the value of the policy into paid-up life insurance or the equivalent value in extended term insurance. In the absence of any action by the insured, at the end of the three-month option period, January 12, 1973, conversion to term insurance would be automatic. Hill took no action to expressly exercise any option.

By a letter dated December 18, 1972, the Government advised Equitable that the notice of levy to attach the "cash loan value" of Hill's policy had not been satisfied and requested payment of "any remittance that may be due."

Equitable declined to make payment to the Government pursuant to the tax levy, asserting that there was no cash loan value as of the date payment was due.

## II

When the motions were originally submitted, the Government's sole argument was that the critical date for determining what should be paid under the levy was the date of the notice of levy. Equitable contended that the relevant date was when the Government demanded payment. For reasons which will be reiterated shortly, I agreed with Equitable's position.

On the motion for reconsideration, the Government advances a new theory. The Government urges that it is entitled to take advantage of the option of the insured to surrender the policy for its net cash value.

## III

This case depends on the interpretation of Section 6332(b) of the Internal Revenue Code. The Government's first contention is that it is entitled to recover the cash loan value of the policy as it existed on the date of the notice of levy. Equitable contends that the Government may recover only to the extent of the cash loan value, if any, which exists on the date of payment—*i. e.*, 90 days after the service of notice of levy.

Section 6332(b) provides in pertinent part:

"(b) Special rule for life insurance and endowment contracts.—

(1) In general.—A levy on an organization with respect to a life insurance or endowment contract issued by such organization shall, without necessity for the surrender of the contract document, constitute a demand by the Secretary or his delegate for payment of the amount described in paragraph (2) and the exercise of the right of the person against whom the tax is assessed to the advance of such amount. Such organization shall pay over such amount 90 days after service of notice of levy. Such notice shall include a certification by the Secretary or his delegate that a copy of such notice has been mailed to the person against whom the tax is assessed at his last known address.

(2) Satisfaction of levy.—Such levy shall be deemed to be satisfied if such organization pays over to the Secretary or his delegate the amount which the person against whom the tax is assessed could have had advanced to him by such organization on the date prescribed in paragraph (1) for the satisfaction of such levy, increased by the amount of any advance (including contractual interest thereon) made to such person on or after the date such organization had actual notice or knowledge (within the meaning of section 6323(i)(1)) of the existence of the lien with respect to which such levy is made, other than an advance (including contractual interest thereon) made automatically to maintain such contract in force under an agreement entered into before such organization had such notice or knowledge."

Under Paragraph (1), a levy on an insurance company constitutes a demand for payment "of the amount described in paragraph (2)", and also constitutes "the exercise of the right of the person against whom the tax is assessed to the advance of such amount". Paragraph (1) requires that payment of "such amount" shall be made 90 days after service of notice of levy. Paragraph (2) defines the amount which the insurance company must pay. This is stated to be "the amount which the person against whom the tax is assessed could have had advanced to him by such organization on the date prescribed in paragraph (1) for the satisfaction of such levy".

Equitable properly contends that the reference in paragraph (2) to "the date prescribed by paragraph (1)"—*i. e.*, 90 days after service of notice of levy—is an essential part of the definition of the amount to be paid, fixing it specifically as the value of the insured's interest as it exists at the date when payment is due. I reject the contention of the Government that the definition of the amount can somehow be read to exclude the reference to the time of payment.

Congress could have made the definition in paragraph (2) relate to the date of service of notice of levy. But it did not do so. Congress has stated in plain language that the time for measurement of the amount due should coincide with the time of actual payment.

The precise question presented in the present case has been decided by the Fifth Circuit in *United States v. Prudential Insurance Co. of America*, 461 F.2d 208 (5th Cir. 1972). The majority held against the Government, as I am doing here. Chief Judge Brown dissented.

I realize that the result of my ruling in the present case is anomalous in some respects. The success of the Government's levy may depend on whether the taxpayer pays a premium during the 90-day period. Moreover, the legislative history indicates that the purpose of the 90-day period was to give the taxpayer time to meet his tax liability by other means than by having the cash value of his insurance policy seized. S.Rep. No. 1708, 89th Cong., 2d Sess. (1966–2 Cum.Bul. 888–9). But even with this purpose in mind, Congress, if it had seen fit to do so, could have fixed the *amount to be paid* as the value existing at the time of the levy. But, for reasons best known to the Congress, it did not word the statute in this manner.

I decline to rule contrary to the Fifth Circuit decision and contrary to the language of the statute.

## IV

I now come to the Government's alternative argument—that it is entitled to the benefit of the insured's option to surrender the policy for its net cash value within three months from the date of default.

The three-month option period following Hill's default did not expire until January 12, 1973. The 90-day period for Equitable to satisfy the tax levy expired December 20, 1972, and the Government's letter demanding payment was dated December 18, 1972. Thus, as of the time when Equitable was obligated to satisfy the levy, Hill still had an option to surrender the policy for its net cash value.

It should be noted that the Government's letter of December 18, 1972 demanding payment referred solely to cash loan value and not to net cash value upon surrender. Thus the Government did not seek to "exercise" any option available to Hill and did not request the net cash value pursuant to the surrender option.

■ In any event, I hold that, under Section 6332(b), the Government is not entitled to obtain the net cash surrender value of the policy. Paragraph 2 of that statute defines the amount to be paid pursuant to the levy as "the amount which the person against whom the tax is assessed could have had *advanced to him* by such organization" (emphasis added). Paragraph 1 of the statute also refers to "the right of the person against whom the tax is assessed to the *advance* of such amount" (emphasis added). The meaning appears clear. The statute speaks of advances, which is another term for loans.

Indeed, the Government concedes (undated memorandum, filed May 17, 1976, p. 5), that the statute in fact refers to cash loan value rather than cash surrender value. Moreover, the Treasury Regulations interpret the statute as referring to cash loan value. Treas.Reg. §§ 301.6332–1, 2 (1972).

However, the Government proposes that cash surrender value should be equated with cash loan value for the purpose of applying the statute. The Government notes that the two values are usually equal, or close to being equal, in dollar amounts, if there are no outstanding loans or interest due on such loans. In the present case, immediately following Hill's default, the cash loan value and the cash surrender value were indeed equal.

This, however, does not solve the problem. The *effect* of borrowing on a policy is far different from the effect of surrendering a policy for its net cash value. If an insured borrows on a policy, he obviously has the right to repay, leaving his insurance in full force and effect. On the other hand, the surrender of a policy for its net cash value terminates the policy. If the insured seeks further insurance, there must be a new application and new determination of insurability. *United States v. Mitchell,* 349 F.2d 94, 105 (5th Cir. 1965).

The majority opinion in *United States v. Prudential Insurance Co. of America, supra* at 211, specifically noted that the purpose of Section 6332(b) was to allow the Government to obtain cash loan value, which would allow the tax payer to maintain his policy in force, subject to the debt.

■ Prior to the enactment of Section 6332(b) it was held in a series of cases that the seizure of cash surrender value in an insurance policy for satisfaction of federal income tax required the institution of a forfeiture proceeding in court, not merely an administrative levy. *Mutual Life Insurance Co. of New York v. United States,* 343 F.2d 71 (9th Cir. 1965); *United States v. Sullivan,* 333 F.2d 100 (3rd Cir. 1964); *Equitable Life Assurance Society of the United States v. U. S.,* 331 F.2d 29 (1st Cir. 1965). Congress, in passing Section 6332(b), quite obviously was not overruling these cases, but was providing for the administrative levy *solely* as to the cash loan value.

## V

The Clerk is directed to enter judgment dismissing the complaint.

So ordered.