## S90A1139. BLANCHARD v. BLANCHARD.
### (401 SE2d 714)

SMITH, Presiding Justice.

The appellee, Mrs. Blanchard, filed for a divorce, and the appellant, Mr. Blanchard, requested the trial court to award him the federal income tax exemptions, 26 USCA § 152 (e) (1), for the parties' two minor children. The trial court ruled that it did not have the authority to award the exemptions.

When we granted the application for discretionary appeal, we were concerned with a question of first impression in Georgia: Whether our state courts have the authority to award the federal income tax dependency exemption, 26 USCA § 152 (e) (1), to the noncustodial parent. For the reasons which follow, we hold that our state courts do not have such authority, and we affirm.

Article Six of the United States Constitution provides that the Constitution and the laws made pursuant to the Constitution are the supreme law of the land and the Judges in every State are bound by them. The Sixteenth Amendment to the United States Constitution provides that only Congress has the power to impose a tax on income. In determining the meaning and application of a federal income tax statute, "[i]t is well-recognized that the goal of statutory interpretation is to effectuate as nearly as possible the will of the legislature. [Cits]." *New Mexico v. United States,* 831 F2d 265, 267 (Fed. Cir. 1987). As the United States Supreme Court explained in *Burnet v. Harmel,* 287 U. S. 103, 110 (53 SC 74, 77 LE 199) (1932) (citations

omitted), when construing federal tax statutes our concern is:

> only with the meaning and application of a statute enacted by Congress, in the exercise of its plenary power under the Constitution, to tax income. The exertion of that power is not subject to state control. It is the will of Congress which controls, and the expression of its will in legislation, in the absence of language evidencing a different purpose, is to be interpreted so as to give a uniform application to a nationwide scheme of taxation. State law may control only when the federal taxing act, by express language or necessary implication, makes its own operation dependent upon state law. . . . The state law creates legal interests but the federal statute determines when and how they shall be taxed.

All analysis must begin with the statutory language itself. *United States v. Wells Fargo Bank*, 485 U. S. 351, 355 (108 SC 1179, 99 LE2d 368) (1988). The language used is the best indicator of Congressional intent, and the statutory language of 26 USCA § 152 (e) (1) is definite. "Custodial parent gets exemption. — Except as otherwise provided in this subsection. . . ." This subsection grants custodial parents, with earned income, a reduction in income tax liability. One of the exceptions within the statute allows a custodial parent to release the exemption. 26 USCA § 152 (e) (2). All the state courts that have considered the issue have agreed that the exemption belongs to the custodial parent, unless that parent signs the release. The courts disagree, however, on whether or not the state courts have the authority to force the custodial parent to sign the release, and grant the noncustodial parent the exemption.

Nothing within the subsection expressly or impliedly makes the operation of the statute "dependent upon state law." *Burnet*, supra at 110. Custodial parents are "entitled to have the statute applied as it was written. . . . Where the words and meaning of a statute . . . are clear, there is no room for judicial consideration of Congressional intent. Gemsco, Inc. v. Walling, 324 U. S. 244, 65 S. Ct. 605, 89 L. Ed. 921 (1944)." *United States v. Prudential Ins. Co. of America*, 461 F2d 208, 210 (5th Cir. 1972). "In the exercise of its Constitutional power to lay taxes, Congress may select the subject of taxation, choosing some and omitting others. [Cits.]" *Sonzinsky v. United States*, 300 U. S. 506, 512 (57 SC 554, 81 LE 772) (1937).

If a state forcibly takes the tax exemption from a custodial parent, with earned income, that parent's income becomes subject to unauthorized tax liability. The state would be exerting the power of taxation, and that power "is not subject to state control." *Burnet*, supra at 110. It is for that reason and others which follow that we cannot

agree with *Cross v. Cross*, 363 SE2d 449 (W. Va. 1988), ("one of the premier cases to decide this issue." *Nichols v. Tedder*, 547 S2d 766, 776 (Miss. 1989)), that a state court has "the equitable power to require the custodial parent to sign the waiver[,]" *Cross*, supra at 458, or, that it is "reasonable that a trial judge should allocate the dependency exemption to the parent in the highest tax bracket. . . ." Id. at 460.

"[T]ax law is statutory and equitable considerations are inapplicable." *Fears v. United States*, 386 FSupp. 1223, 1227 (N.D. Ga. 1975), aff'd 518 F2d 1405 (5th Cir. 1975). As further stated in *Fears*, supra at 1226:

> Congress, not the Courts, bears the responsibility for establishing the rules of taxation, and as long as Congress has acted within its constitutional powers, the Courts cannot use broad powers to frustrate specific statutory language. [Cit.]

The specific statutory language should not be frustrated by state courts' attempts to use equitable powers to tax the income of the custodial parent.

If the purposes of the statute are to provide "certainty" and "ease IRS's administrative burden," *Cross*, supra at 459, those purposes will be defeated if state courts make federal revenue decisions. There can be no "certainty" or uniformity in taxation in our mobile society, when some state courts force custodial parents to "waive" their federal benefits. The will of Congress, not a state court, determines who is to be taxed. The difference in application among the states will prevent a uniform "nationwide scheme of taxation." *United States v. Wells Fargo Bank*, 485 U. S., supra at 355. IRS's administrative burdens will be increased as custodial parents challenge the validity of "court-ordered waivers." See *Cross*, supra at 459.[1] "[T]here is an effective waiver only when it is wholly voluntary and comes . . . without any solicitation or coercion whatsoever from either the state or the court." *Farmer v. State*, 128 Ga. App. 416, 417 (196 SE2d 893) (1973). A waiver is a voluntary relinquishment of some known right, benefit, or advantage, which but for the waiver, the party otherwise would have enjoyed. "It cannot be held that there has been a waiver of valuable rights where the circumstances show that what was done was involuntary." (Citation omitted.) 92 CJS 1054,

---

[1] IRS Form 8332 entitled "Release of Claim to Exemption for Child of Divorced or Separated Parents," does not contain the word "waiver," but the relinquishment of the right was considered a "waiver" by the Committee. The Committee notes provide: "The Committee wishes to provide more certainty by allowing the custodial spouse the exemption unless that spouse *waives* his or her right to claim the exemption." (Emphasis supplied.) Rep. 98-432, Part II, 98th Cong., second.

Waiver.

The state's invasion into the plenary power of the Congress by forcing a "waiver" can best be illustrated by the hypothetical example set out in *Nichols v. Tedder*, 547 S2d, supra at 775. A simplified chart, using the *Nichols* figures indicates what happens when state courts are allowed to "allocate" the exemption.[2]

| CUSTODIAL PARENT | | NON-CUSTODIAL PARENT | |
|---|---|---|---|
| Adj. Gross Inc. . . . . . . . . . | $10,000. | Adj. Gross Inc. . . . . . . . . . | $20,000. |
| Tax owed w/o exempt . . | $ 776. | Tax owed w/o exempt . . | $ 2,276. |
| Tax owed with exempt . | 619. | Tax owed with exempt . | 1,969. |
| INCREASED LIABILITY $ | 157. | INCREASED SAVINGS $ | 307. |
| Custodial parent keeps exemption | | total taxes paid | $2,895. |
| Non-custodial parent given exemption | | total taxes paid | 2,745. |
| REDUCTION IN FEDERAL REVENUE | | $ | 150. |

Custodial parent's tax liability is increased . . . . . . . . . . . . . . . . $157.
Federal income tax revenue is decreased . . . . . . . . . . . . . . . . . . . 150.

The non-custodial parent receives the sum of the increased liability to the custodial parent and the reduced tax revenue (157 + 150) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $307.

No one disputes that the custodial parent's "adjusted gross income is [usually] less than the adjusted gross income of the non-custodial parent." *Nichols* id., and that there is a "low level of compliance with alimony and child support awards." *Cross*, supra at 459; *Nichols*, supra at 777. Each day more custodial parents and children fall below the poverty level, crowding welfare rolls, and needy children face serious shortages in government programs because of massive cuts in federal, state, and local budgets.[3] In light of these appalling domestic problems it is totally unreasonable for a state court to forcibly increase the custodial parent's income tax liability by $157, reduce federal income tax receipts by $150, and provide the non-custodial parent with a tax saving of $307 (the sum of the custodial parent's increased liability and the reduced federal tax receipts (157 + 150 = 307)).

---

[2] Nowhere within the IRC have state courts been authorized to "allocate" the exemption. Allocations are left to the federal government. 26 USCA § 482, entitled "Allocation of income and deductions among taxpayers," gives the *Secretary* the express power to "allocate" for the purpose of "preventing evasion of taxes. . . ."

[3] While we recognize that "[i]nquiry into the hidden motives which may move Congress to exercise a power constitutionally conferred upon it is beyond the competency of courts. [Cits.]" *Sonzinsky*, supra at 513-14, it is clear that Congress has given the benefit to the parent who generally has the lowest income and who may not be receiving court ordered child support payments.

State courts are not authorized to impose income tax liability, nor are they authorized to reduce federal income tax receipts. "Deductions, including dependency exemptions are allowed as a matter of legislative grace. New Colonial Ice Co., Inc. v. Helvering, 292 U. S. 435 (13 AFTR 1180) (1934). [Only] Congress has the power to condition, limit or deny deductions in arriving at the net income it chooses to tax. [Cit.]" *Labay v. Commr. of Revenue*, 55 TC 6, aff'd per curiam, 450 F2d 280 (5th Cir. 1971). Furthermore, we refuse to add to Georgia trial courts' already heavy caseload by placing our courts in the undesirable position of having to decide on a case-by-case and yearly basis who should be granted the exemption.[4] Laws should be interpreted as Congress intended to give a "uniform application to a nationwide scheme of taxation." *Burnet*, supra at 110. Congress has declared that the exemption belongs to the custodial parent and Georgia will not endeavor to frustrate the "specific statutory language." *Fears*, supra at 1226.

*Judgment affirmed. Clarke, C. J., Benham, J., and Judge Kenneth Followill concur; Bell, Hunt, and Fletcher, JJ., dissent; Weltner, J., not participating.*

FLETCHER, Justice, dissenting.

Prior to its 1984 amendment, Internal Revenue Code (IRC) § 152 (e) created a general rule giving the custodial parent the right to claim the parties' children as tax exemptions, with two exceptions. 26 USC § 152 (e). Under the first exception, a non-custodial parent providing at least $600 per year per child in support payments could claim the exemption if the non-custodial parent was awarded the exemption under the parties' divorce decree or under a written agreement. Under the second exception, a non-custodial parent providing at least $1,200 per year per child in support payments could claim the exemption if the custodial parent did "not clearly establish that he provided more for the support of such child during the calendar year than the parent not having custody." IRC § 152 (e) (2) (B) (i) and (ii) (1982). *Davis v. Fair*, 707 SW2d 711, 712-713, 714 (Tex.Ct.App. 1986).

The pre-1984 law resulted in the IRS becoming the unwilling mediator of factual disputes between divorcing parents over the issue of who actually provided more support for the child. Administrative costs incurred in resolving such disputes were relatively high, with the government generally having little tax revenue at stake; consequently,

---

[4] Will custodial parents who refuse to relinquish their federal benefits be jailed for contempt? Could some form of state liability result? How will the state courts handle the first three months of each year as they are asked to determine anew the exemption question prior to the April 15th deadline? Who will bear the penalties and interest of late filing due to overburdened courts? What will happen as parents move from one jurisdiction to another?

IRC § 152 (e) was amended in 1984. *Cross v. Cross*, 363 SE2d 449, 457 (W.Va. 1988); *Nichols v. Tedder*, 547 S2d 766, 771 (Miss. 1989).

With certain exceptions not applicable here, the 1984 amendment gives the custodial parent the right to claim the children as dependents, unless the custodial parent signs a written waiver of the dependency exemption. The waiver may be made yearly, in one written instrument covering a period of years, or in perpetuity. In addition, the custodial parent's written waiver must be attached to the non-custodial parent's federal income tax return in order to entitle the non-custodial parent to the exemption. IRC § 152 (e) (2) (A) and (B) (1984).

Since the 1984 amendment, 19 of the 27 states that have addressed the question presented here have definitively recognized that state trial courts have the authority to allocate the exemption. One other state has reached the same basic result, while only seven states, in reliance upon the doctrine of federal preemption, have held to the contrary.

The 1984 amendment, unlike the pre-1984 law, does not make express provision for an award of the dependency exemption by court decree. However, the undisputed purpose of the 1984 amendment demonstrates that Congress is indifferent to the question of which parent claims the exemption so long as the IRS does not have to expend its resources in making the decision.

> What the new Code section sought to achieve was certainty in the allocation of the dependency exemption *for federal tax administration purposes.* By placing the dependency exemption in the custodial parent unless a waiver is executed, the new statute relieves the Internal Revenue Service of litigation. The new statute is entirely silent concerning whether a domestic court can *require* a custodial parent to execute a waiver, and this silence demonstrates Congress's surpassing indifference to how the exemption is allocated as long as the IRS doesn't have to do the allocating.

(Emphasis in original.) *Cross*, 363 SE2d at 457. Thus, a state court's allocation of the dependency exemption to a non-custodial parent does not conflict with any federal tax policy and has not been preempted by any federal tax law. Consequently, neither the Internal Revenue Code nor general principles of federal law, see *Cross*, 363 SE2d at 458-459, n. 19, prohibit a state court's award of the exemption.

> [W]hat the *Davis* court missed is that there is *no prohibition* — express or implied — on a state court's requiring the

execution of the waiver, and because state court allocation of dependency exemptions has been custom and usage for decades, it is more reasonable than not to infer that if Congress had intended to forbid state courts from allocating the exemption by requiring the waiver to be signed, Congress would have said so.

(Emphasis in original.) Id. at 458.

Because Congress is wholly indifferent to how the exemption is allocated, I would hold that superior courts in Georgia, which act as courts of equity, do have the discretion to allocate the dependency exemption and do have the authority to order the custodial parent to execute a waiver of that exemption in order to enforce the allocation.

A court does not have the authority to grant a taxpayer an exemption or deduction; such is a matter solely for determination by the legislative branch. However, in the situation presented here, the court would not be granting an exemption; the exemption was granted by Congress. The court would merely be allocating that exemption between the custodial and non-custodial parents as a part of the court's determination of the obligations of the parties to the divorce action.

Contrary to the conclusion of the majority, permitting state courts to exercise their discretion regarding allocation of the dependency exemption is not an imposition of a tax by the courts and does not subject the custodial parent's income to unauthorized tax liability. We would merely be recognizing that state courts have the same discretion they had prior to the 1984 amendment: the discretion to allocate the dependency exemption. Allocation of that exemption is not the imposition of a tax.

I would also note that the majority's holding will not simplify the trial of divorce actions where child support is an issue because the adverse impact upon the non-custodial parent's ability to pay child support, resulting from the dependency exemption remaining with the custodial parent, will, in all likelihood, give rise to a claim for the downward modification of child support.

For the foregoing reasons, I dissent. I am authorized to state that Justice Bell and Justice Hunt join in this dissent.

DECIDED MARCH 15, 1991.

*Surrett, Walker, Creson & Colley, Carl J. Surrett,* for appellant.
*Fleming, Blanchard & Bonner, M. Kay Jackson,* for appellee.
*Dye, Miller, Tucker & Everitt, John B. Long, Benjamin H.*

*Brewton,* amicus curiae.