The Mattie K. **CARTER TRUST**, by Benjamin J. **FORTSON**, Jr., Trustee, Plaintiff,

v.

**UNITED STATES of America**, Defendant.

No. 4:02–CV–154–A.

United States District Court, N.D. Texas, Fort Worth Division.

April 11, 2003.

Robert C. Grable; Kelly Hart & Hall-man, Fort Worth, TX, for plaintiff.

Manuel P. Lena, Jr.; U.S. Department of Justice, Dallas, TX, for defendant.

## MEMORANDUM OPINION and ORDER

MCBRYDE, District Judge.

Before the court for consideration are a motion for partial summary judgment filed by defendant, United States of America (Internal Revenue Service ["IRS"]), and a motion for summary judgment filed by plaintiff, the Mattie Carter Trust ("Carter Trust"), by Benjamin J. Fortson, Jr. ("Fortson"), Trustee. The court, after having reviewed the motions, responses thereto, Carter Trust's reply, the summary judgment evidence, and applicable authorities, concludes that IRS' motion should be denied, and that Carter Trust's motion should be granted.

## I.

### Undisputed Facts

Carter Trust is a testamentary trust established in 1956 under the Last Will and Testament of Mattie K. Carter, deceased. Fortson has been the trustee of Carter Trust since 1984, and manages its assets, including the Carter Ranch ("ranch"), which has been operated by Carter Trust since 1956.[1]

The ranch covers some 15,000 acres, and is used for a cattle ranching operations and for oil and gas interests. Fortson, Jr. Decl. ¶ 2. In 1994, there were approximately 4,700 head of cattle on the ranch; there were approximately 3,300 head of cattle on

the ranch in 1995. *Id.* ¶¶ 9–10. At the relevant times, Carter Trust employed a full-time ranch manager and other full- and part-time employees who performed essentially all of the activities for the ranch. The ranch manager in 1994 and 1995 was David Rohn ("Rohn"), who managed the ranch's day-to-day operations, subject to Fortson's approval. *Id.* ¶ 7. Rohn was "charged with overall management of livestock production and the management and conservation of pasture lands, as well as the supervision and direction of the other employees of the Trust involved in the Ranch operations." *Id.* ¶ 8.

Fortson, as trustee of Carter Trust, dedicated a substantial amount of time and attention to ranch activities:

4. I was chosen to be Trustee because of my extensive business, managerial, and financial experience. My duties include reviewing and approving all financial and operating proposals for the Ranch and the Trust, budget and budgeting for the Ranch, all investment decisions for the Trust, asset acquisition and sales, supervising all employees and agents of the Trust and the Trust's service providers, reviewing all financial information, and responsibility for all banking relationships of the Trust. My duties and responsibilities as Trustee routinely require a significant percentage of my time and attention, and I maintain regular office hours during which I am consulted regarding any Trust matter that arises.

. . . . .

7. I have delegated certain aspects of the operation and management of the Ranch. It was necessary for the Ranch to employ someone with extensive experience in the management and operation of a large, active cattle ranch. . . . Now, the Trust employs a full-time ranch

---

1. The parties agree that Carter Trust is a "complex trust." *See generally Hay v. United States,* 263 F.Supp. 813, 818–19 (N.D.Tex. 1967).

manager, who is responsible for the day-to-day operations of the Ranch, subject to my approval....

8. I routinely discuss management issues pertaining to the Ranch with the ranch manager....

.    .    .    .    .

12. I have also delegated oversight responsibility for the Ranch to Benjamin J. Fortson III. Mr. Fortson III is a beneficiary of the Trust and takes a very active, hands-on role in supervising the Ranch manager and general Ranch operations. He spent well in excess of 500 hours engaged in Ranch operations and management at the Ranch in both tax years 1994 and 1995.

*Id.* ¶¶ 4, 7–8, 12. In this way, Fortson, Rohn, and other employees operated the ranch on behalf of Carter Trust.

Carter Trust claimed deductions in the 1994 and 1995 tax years for losses of $856,518.00 and $796,687.00, respectively, incurred in connection with the ranch operations. On April 8, 1999, IRS issued a notice of deficiency to Carter Trust related to these deductions. The trust paid the disputed tax for each year in full on September 27, 1999, for a total of $506,565.94 ($44,227.00 plus interest thereon of $20,529.84 for 1994, and $339,960.00 plus interest thereon of $101,849.10 for 1995). It made timely refund claims, which IRS denied on December 3, 2001, and timely filed this suit, seeking a refund of $506,565.94 for overpaid taxes for the 1994 and 1995 tax years, plus interest from the date paid.

## II.

### *Legal Issues Presented in the Motions*

The parties' cross-motions for summary judgment present an issue of first impression related to "passive activity," as defined in section 469 of the Internal Revenue Code ("I.R.C."), 26 U.S.C. § 469. IRS argues that the "material participation" of a trust in a trade or business, within the meaning of section 469(h)(1) of the I.R.C., should be determined by evaluating only the activities of the trustee in his capacity as such. In contrast, Carter Trust urges that, because the trust (not the trustee) is the taxpayer, "material participation" in the ranch operations should be determined by assessing the activities of Carter Trust, through its fiduciaries, employees, and agents.

## III.

### *Analysis*

■■■ IRS issued a "Notice of Deficiency" on April 8, 1999, which stated that Carter Trust owed additional taxes for 1994 and 1995:

It is determined that the Schedule F losses claimed in connection with your ranching and cattle activities for expenses in excess of income are not allowable because it has been established that this activity is a passive activity within the meaning of Section 469 of the Internal Revenue Code....

App. to Carter Trust Mot., Ex. C, at 10, 17. In response to Carter Trust's refund claim, IRS proposed "full disallowance," giving the following explanation:

The loss from the Schedule F is being disallowed for 1994 and 1995 because the Trustee, Ben J. Forton, failed to meet the material participation requirements of IRC Section 469(h) and Temporary Treas. Reg. Section 1.469–5T....

*Id.*, Ex. G, at 62, 64.[2] The parties do not dispute that the court reviews *de novo*

---

**2.** IRS, through its counsel, conceded in a telephone hearing conducted on April 3, 2003, that temporary treasury regulation section 1.469–5T had no applicability to this case because that section concerns material partic-

Carter Trust's refund claim. *See, e.g., Powe v. Comm'r,* 389 F.2d 46, 47 (5th Cir.1967) (saying, "[i]n making its re-determination of tax liability the Tax Court is free to consider all elements reflected in the record").

IRS could disallow the losses only if they represented a "passive activity loss" within the meaning of I.R.C. § 469(a):

(1) **In general.**—If for any taxable year the taxpayer is described in paragraph (2), neither—

(A) the passive activity loss, nor

(B) the passive activity credit,

for the taxable year shall be allowed.

I.R.C. § 469(a)(1). A "passive activity" is an activity "(A) which involves the conduct of any trade or business, and (B) in which the taxpayer does not materially participate." *Id.* § 469(c)(1). IRS acknowledges that the ranch operations constitute a business. The statute defines "taxpayer" as:

(2) **Persons described.**—The following are described in this paragraph:

(A) any individual, estate, or trust,

(B) any closely held C corporation, and

(C) any personal service corporation.

*Id.* § 469(a)(2). Thus, Carter Trust fits within the definition of taxpayer in section 469(a)(2)(A).

In pertinent part, section 469(h) defines "material participation" by a taxpayer in a business activity as follows:

(1) **In general.**—A taxpayer shall be treated as materially participating in an activity only if the taxpayer is involved in the operations of the activity on a basis which is—

(A) regular,

(B) continuous, and

(C) substantial.

I.R.C. § 469(h)(1).

The question arises as to how to determine whether Carter Trust materially participated in the ranch operations. IRS takes the position that the material participation of a trust in a business should be made by reference only to the trustee's activities. *See, e.g.,* Br. to IRS Mot. at 8. Carter Trust counters that, as a legal entity, it can "participate in an activity only through the actions of its fiduciaries, employees, and agents," and that through such collective efforts, its cattle ranching operations during 1994 and 1995 were regular, continuous, and substantial. Am. Br. to Carter Trust Mot. at 17.

■ The starting point for the court's analysis of section 469 is, of course, the statutory language:

[A party] is entitled to have the statute applied as it was written, not as it could have been or should have been written, nor even as Congress might have intended to write it. Where the words and meaning of a statute of this kind are clear, there is no room for judicial consideration of Congressional intent.

*United States v. Prudential Ins. Co. of Am.,* 461 F.2d 208, 210–11 (5th Cir.1972). The United States Supreme Court has observed that "[i]n interpreting the meaning of the words in a revenue Act, we look to the ordinary, everyday senses of the words." *Comm'r v. Soliman,* 506 U.S. 168, 174, 113 S.Ct. 701, 121 L.Ed.2d 634 (1993) (internal quotations omitted).

■ As discussed above, section 469 says that a trust is a taxpayer, I.R.C. § 469(a)(2)(A), and that a taxpayer is treated as materially participating in a business if its activities in pursuit of that

ipation for individual taxpayers. Counsel for IRS also disclosed that IRS contends that a fact issue exists in this case as to whether

Fortson satisfied the material participation standard of I.R.C. § 469.

business are regular, continuous, and substantial, *id.* § 469(h)(1). It is undisputed that Carter Trust, not Fortson, is the taxpayer. Common sense dictates that the participation of Carter Trust in the ranch operations should be scrutinized by reference to the trust itself, which necessarily entails an assessment of the activities of those who labor on the ranch, or otherwise in furtherance of the ranch business, on behalf of Carter Trust. *Cf. Fojtik v. First Nat'l Bank,* 752 S.W.2d 669, 673 (Tex. App.—Corpus Christi 1988) (explaining that "the acts of a corporation's agents are deemed to be acts of the corporation itself"), *writ denied per curiam,* 775 S.W.2d 632 (Tex.1989).[3]

■ IRS' contention that Carter Trust's participation in the ranch operations should be measured by reference to Fortson finds no support within the plain meaning of the statute. Such a contention is arbitrary, subverts common sense, and attempts to create ambiguity where there is none. The court recognizes that IRS has not issued regulations that address a trust's participation in a business, *see, e.g.,* Am. Br. to Carter Trust Mot. at 16–17, 20; Br. to IRS Mot. at 7, and that no case law bears on the issue. However, the absence

of regulations and case law does not manufacture statutory ambiguity. The court has studied the snippet of legislative history IRS supplied that purports to lend insight on how Congress intended section 469 to apply to a trust's participation in a business.[4] Nevertheless, the court only resorts to legislative history where the statutory language is unclear, *see Stockwell v. Comm'r,* 736 F.2d 1051, 1053 (5th Cir.1984), which, as noted above, is not the case here.

■ The court concludes that the material participation of Carter Trust in the ranch operations should be determined by reference to the persons who conducted the business of the ranch on Carter Trust's behalf, including Fortson. The summary judgment evidence makes clear that the collective activities of those persons with relation to the ranch operations during relevant times were regular, continuous, and substantial so as to constitute material participation.

■ Alternatively, the court concludes that, based on the undisputed summary judgment evidence, Fortson's activities with regard to the ranch operations, standing alone, were regular, continuous, and

---

**3.** Carter Trust likens itself to a closely held C corporation, an analogy that the court finds potentially appropriate here. As a trust, it has operated a business (the ranch) since 1956:

> The Trust, however, is very similar to a closely held C corporation. The Trustee, like the board of directors of a C corporation, has the fiduciary obligation to the beneficiaries of the Trust for the benefit of such beneficiaries. Moreover, the Trust, like a C corporation, is a legal entity and is subject to entity-level U.S. federal income taxes. In addition, and most importantly, as a legal entity, the Trust, like a C corporation, can act only through its fiduciaries, employees and agents. Therefore, the Trust is most analogous to a closely held C corporation. Am. Br. to Carter Trust Mot. at 21. IRS, through counsel, acknowledged that Fortson's

relationship to Carter Trust is similar to that of a chief executive officer to a corporation. However, the court did not need to resort to the statute and regulations applicable to corporations to be satisfied of the merit of Carter Trust's position in this action.

**4.** *See* S. Rep. No. 99–313, 1986–3 C.B. 735; App. to IRS Mot. at 126. And, the court studied the other secondary authority the IRS presented. *See, e.g.,* Br. to IRS Resp. at 2–3; Br. to IRS Mot. at 10–12. Moreover, the court on its own located potentially relevant secondary authority, *see, e.g.,* Staff of J. Comm on Tax'n, *General Explanation of the Tax Reform Act of 1986,* at 242 n. 33 (1987); Robert J. Peroni, *A Policy Critique of the Section 469 Passive Loss Rules,* 62 S. Cal. L. Rev. 1, 46 & n. 188 (1988), but does not find it helpful.

substantial so as to constitute material participation by him, as trustee, during relevant times. Consequently, even if the court were to accept the legal standard articulated by IRS, through counsel, during the April 3, 2003, telephone hearing, Carter Trust would prevail under the summary judgment record.

The losses Carter Trust sustained in 1994 and 1995 due to the ranch operations were not passive activity losses within the meaning of section 469. IRS improperly disallowed these losses, with the consequence that Carter Trust is entitled to a refund of the overpaid taxes for the 1994 and 1995 tax years. In addition, Carter Trust is entitled to interest on the overpaid taxes pursuant to the authority of I.R.C. § 6611.

## IV.

### *ORDER*

For the reasons discussed,

The court ORDERS that IRS' motion for partial summary judgment be, and is hereby, denied.

The court further ORDERS that: Carter Trust's motion for summary judgment be, and is hereby, granted. Carter Trust is entitled to a refund in the amount of $506,565.94 by reason of its overpayment of taxes in the 1994 and 1995 tax years, and is entitled to interest on the overpayment in the amount of $133,402.98.[5] A judgment for Carter Trust against United States of America for the total of this amount should be granted.

5. The court is relying on the calculations provided by Carter Trust in its reply, filed on April 4, 2003, for the interest amount. *See* Carter Trust Reply at 2–4; App. to Carter Trust Reply, Ex. K. Though given an opportu-

### *FINAL JUDGMENT*

In accordance with the memorandum opinion and order signed by the court this same day,

The court ORDERS, ADJUDGES, and DECREES that plaintiff, the Mattie Carter Trust ("Carter Trust"), by Benjamin J. Fortson, Jr., Trustee, have and recover from defendant, United States of America, $639,968.92, plus post-judgment interest thereon from this date at the rate of 1.19% per annum.

The court further ORDERS, ADJUDGES, and DECREES that Carter Trust shall have and recover from defendant costs of court incurred by it.

nity to disagree with the availability of interest and Carter Trust's calculations of interest, IRS failed to file a response to Carter Trust's reply.