142 T.C. No. 9

UNITED STATES TAX COURT

FRANK ARAGONA TRUST,
PAUL ARAGONA, EXECUTIVE TRUSTEE, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15392-11.　　　　　　　　　　Filed March 27, 2014.

T is a trust that owned rental real-estate properties and engaged in other real-estate activities. T's rental real-estate activities would be considered per se passive activities under I.R.C. sec. 469(c)(2) unless T qualified for the exception found in I.R.C. sec. 469(c)(7). This exception is applicable if more than one-half of the personal services performed in trades or businesses by the taxpayer are performed in real-property trades or businesses in which the taxpayer materially participates and if the taxpayer performs more than 750 hours of services during the year in real-property trades or businesses in which the taxpayer materially participates.

Held: A trust can qualify for the I.R.C. sec. 469(c)(7) exception. A trust is capable of performing personal services within the meaning of I.R.C. sec. 469(c)(7). Services performed by individual trustees on behalf of the trust may be considered personal services performed by the trust.

Held, further, T materially participated in real-property trades or businesses.

Richard S. Soble, for petitioner.

Brett Chmielewski and Meso T. Hammoud, for respondent.

MORRISON, Judge:  The respondent (referred to here as the "IRS") issued a notice of deficiency to the Frank Aragona Trust (sometimes referred to here as the "trust"), determining the following deficiencies in federal income tax and the following penalties:

| Year | Deficiency | Accuracy-related penalty sec. 6662(a) |
|------|------------|----------------------------------------|
| 2003 | $86,289.00 | $17,257.80 |
| 2004 | 421,292.00 | 84,258.40 |
| 2005 | -0- | -0- |
| 2006 | 84,540.00 | 16,908.00 |

The trust filed a petition as permitted by section 6213(a).[1] We have jurisdiction to redetermine the deficiencies and penalties under section 6214(a). After concessions,[2] the two issues remaining for decision are:

(1)    Does section 469(c)(7) apply to the trust?  Yes.

(2)    Are the fees that the trust paid to its trustees properly characterized as expenses of the trust's rental real-estate activities?  We need not reach this issue because of our resolution of the first issue.

FINDINGS OF FACT

Some facts have been stipulated by the parties.  The stipulated facts are incorporated in the Court's findings of fact.  The trust is a complex residuary trust that owns rental real-estate properties and is involved in other real-estate business activities such as holding real estate and developing real estate.  Its principal place

---

[1]Even though the petition was filed by Paul V. Aragona, the executive trustee, for ease of reference we refer to the trust as having filed the petition.  In any event we do not mean to suggest whether the petitioner in this case is the trustee or the trust.  See sec. 7482(b)(1)(A) (providing that default appellate venue for deficiency cases is the circuit in which is located the legal residence of the petitioner).  We do not reach that particular question.

All references to sections are to the Internal Revenue Code of 1986, as in effect for the years at issue.

[2]The IRS conceded that the trust is not liable for any accuracy-related penalties for the 2003, 2004, and 2006 tax years.  (The notice of deficiency did not determine a penalty for 2005.)

of business was in Michigan when it filed the petition. In 1979 Frank Aragona formed the trust with him as grantor and trustee and with his five children as beneficiaries. According to the trust instrument, the five children share equally in the income of the trust. Frank Aragona died in 1981. He was succeeded as trustee by six trustees. One of the six trustees was an independent trustee.[3] The other five trustees were Frank Aragona's five children, including Paul V. Aragona, the executive trustee.[4] Although the trustees formally delegated their powers to the executive trustee (in order to facilitate daily business operations), the trustees acted as a management board for the trust and made all major decisions regarding the trust's property. During 2005 and 2006 the board met every few months to discuss the trust's business. Each of the six trustees was paid a fee directly by the trust (referred to here as a "trustee fee" or collectively as "trustee fees") in part for the trustee's attending board meetings. Three of the children--Paul V. Aragona, Frank S. Aragona, and Annette Aragona Moran--worked full time for Holiday Enterprises, LLC, a Michigan limited liability company that is wholly owned by the trust. Holiday Enterprises, LLC, is a disregarded entity for federal income tax

---

[3]The trust instrument gives the independent trustee the power to distribute the principal of the trust under limited circumstances.

[4]When the petition was filed, Paul V. Aragona was a resident of Michigan.

purposes. Holiday Enterprises, LLC, managed most of the trust's rental real-estate properties. It employed several people in addition to Paul V. Aragona, Frank S. Aragona, and Annette Aragona Moran, including a controller, leasing agents, maintenance workers, accounts payable clerks, and accounts receivable clerks. In addition to receiving a trustee fee, Paul V. Aragona, Frank S. Aragona, and Annette Aragona Moran each received wages from Holiday Enterprises, LLC.

The trust conducted some of its rental real-estate activities directly, some through wholly owned entities, and the rest through entities in which it owned majority interests and in which Paul V. and Frank S. Aragona owned minority interests. It conducted its real-estate holding and real-estate development operations through entities in which it owned majority or minority interests and in which Paul V. and Frank S. Aragona owned minority interests.

The table below summarizes the activities of the six trustees on behalf of the trust during 2005 and 2006:

| Name of trustee | Role | Annual trustee fee |
| --- | --- | --- |
| Salvatore S. Aragona | Full-time dentist; limited involvement in trust's business | $72,000 |
| Paul V. Aragona | Executive trustee; full-time employee of Holiday Enterprises, LLC | 72,000 |
| Anthony F. Aragona | Disabled; limited involvement in trust's business | 72,000[a] |
| Frank S. Aragona | Full-time employee of Holiday Enterprises, LLC | 72,000 |
| Annette Aragona Moran | Full-time employee of Holiday Enterprises, LLC | 72,000 |
| Charles E. Turnbull | Independent trustee; attorney with O'Reilly Rancilio, P.C.; limited involvement in trust's business | 14,400 |
| Total | | 374,400 |

[a] The $72,000 annual trustee fee for Anthony F. Aragona was reported as a distribution from the trust for tax purposes.

During the 2005 and 2006 tax years, the trust incurred losses from its rental real-estate properties. The losses were reported on the trust's income-tax returns, Forms 1041, "U.S. Income Tax Return for Estates and Trusts" and on Schedules E, "Supplemental Income and Loss", and were reflected on line 5. Some of the losses were reported as being associated with Holiday Enterprises, LLC, including $302,400 (the $374,400 in trustee fees minus the $72,000 in trustee fees paid to

Anthony F. Aragona). The losses reported as being associated with Holiday Enterprises, LLC, were subdivided into various categories of expenses; the $302,400 was reported in the category of "other" expenses. On its returns the trust treated its rental real-estate activities, in which it engaged both directly and through its ownership interests in a number of entities, as non-passive activities. So treated, the losses from these activities contributed to the amounts of net operating losses, which the trust carried back to its 2003 and 2004 tax years.

While reporting losses for its rental real-estate activities, the trust also reported gains from its other (non-rental) real-estate activities. The trust owned interests in a number of entities engaged in real-estate holding activities and real-estate development projects.

On its Form 1041 for each year, the trust did not enter an amount on line 12, the line for deductions for "Fiduciary fees".

In the notice of deficiency, the IRS determined that the trust's rental real-estate activities were passive activities,[5] a determination that increased the passive-activity losses for 2005 and 2006.[6] The increase in the passive-activity

_____

[5]The notice of deficiency stated that "[t]he rental losses incurred are deemed passive".

[6]A passive-activity loss is the amount by which aggregate losses from all the
(continued...)

losses resulted in a decrease in the allowable deductions from gross income for each of those years,[7] which decreased the net-operating-loss carrybacks to the 2003 and 2004 years. The notice of deficiency determined that for each of 2005 and 2006 the trust should be allowed a deduction of $302,400 for "Fiduciary fees". The notice of deficiency also determined that the trust's Schedule E expenses, which, as reported on the returns, included the $302,400 in trustee fees, should be reduced by $302,400. Thus, the notice of deficiency reclassified the $302,400 amounts as fiduciary fees to be deducted on line 12 of Form 1041 instead of expenses deducted against rental income on Schedule E (and reflected on line 5 of Form 1041). In explaining the reclassification of the $302,400 in fees, the notice of deficiency stated:

> It is determined your fiduciary fees of $302,400.00 and $302,400.00, should be reported on line 12 on the face of the return Form 1041 instead of $302,400.00 and $302,400.00 shown as a rental expense

---

[6](...continued) taxpayer's passive activities for the year exceed the aggregate income from all the taxpayer's passive activities for the year. Sec. 469(d)(1). The trust's losses from its rental real-estate activities exceeded its income from the activities. Therefore, characterizing the trust's rental real-estate activities as passive resulted in a net increase in the trust's passive-activity loss for each year.

[7]The existence of a passive-activity loss for the year results in the disallowance of current deductions in the amount of the passive-activity loss for the year. Sec. 1.469-1T(a)(1)(i), Temporary Income Tax Regs., 53 Fed. Reg. 5701 (Feb. 25, 1988).

deduction on the Schedule E for taxable years 2005 and 2006, respectively.

The adjustment was made to the rental loss claimed by Holiday Enterprises to disallow the trustee fees as an "other" expense and the expense was moved to Line 12 on the face of the return where they are required to be shown as "fiduciary fees".

Computationally, the notice of deficiency did not include the $302,400 in the amount of the trust's passive-activity-loss deductions for each year.

OPINION

The petitioner generally bears the burden of proof (and therefore must prove the relevant facts by the preponderance of the evidence) except when the conditions of section 7491(a) are satisfied. Tax Ct. R. Pract. & Proc. 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Bronstein v. Commissioner, 138 T.C. 382, 384 (2012). Our findings of fact in this Opinion are based on the preponderance of the evidence. Thus, it is unnecessary to determine which party (i.e., the trust or the IRS) has the burden of proof. See Estate of Bongard v. Commissioner, 124 T.C. 95, 111 (2005).

1.  Does the section 469(c)(7) exception apply to the trust?

In 1986 Congress enacted section 469. Tax Reform Act of 1986, Pub. L. No. 99-514, sec. 501(a), 100 Stat. at 2233. Section 469(a)(1) provides that a taxpayer's passive-activity loss is disallowed for the year if the taxpayer is

"described in" section 469(a)(2).[8]  The following taxpayers are "described in"

section 469(a)(2):  individuals, estates, trusts, closely held C corporations, and

personal service corporations.  A passive-activity loss is the amount by which the

aggregate losses from all the taxpayer's passive activities for the year exceeds the

aggregate income from all the taxpayer's passive activities for such year.  Sec.

469(d)(1); see also sec. 1.469-2T(b)(1), Temporary Income Tax Regs., 53 Fed.

Reg. 5711 (Feb. 25, 1988).  A passive activity is any activity which involves the

conduct of any trade or business in which the taxpayer does not materially

participate.  Sec. 469(c)(1).  Under section 469(c)(2), any rental activity is

considered a passive activity, even if the taxpayer materially participates in the

activity.  Sec. 469(c)(4).  Thus, any rental activity is passive per se.

In 1993 Congress enacted section 469(c)(7), which provides that section

469(c)(2) does not apply to the rental real-estate activity of any taxpayer who

meets the requirements of section 469(c)(7)(B).  Omnibus Budget Reconciliation

Act of 1993, Pub. L. No. 103-66, sec. 13143(a) and (b), 107 Stat. at 440, 441.[9]

---

[8]A loss from an activity disallowed under sec. 469(a) is treated as a
deduction allocable to such activity for the next tax year.  Sec. 469(b).

[9]The following reason was given for the amendment:

The passive loss rules limit deductions and credits from passive

(continued...)

Section 469(c)(7)(B) consists of two tests. The first test is met if more than one-half of the "personal services" performed in trades or businesses by the taxpayer during the taxable year is performed in real-property trades or businesses in which the taxpayer materially participates. Sec. 469(c)(7)(B)(i). The second test is met if the taxpayer performs more than 750 hours of "services" during the year in real-property trades or businesses in which the taxpayer materially participates. Sec. 469(c)(7)(B)(ii). Both tests must be met.[10]

---

[9](...continued)
trade or business activities. Deductions attributable to passive activities, to the extent they exceed income from passive activities, generally may not be deducted against other income, such as wages, portfolio income, or business income that is not derived from a passive activity. * * *

\*        \*        \*        \*        \*        \*

The committee considers it unfair that a person who performs personal services in a real estate trade or business in which he materially participates may not offset losses from rental real estate activities against income from nonrental real estate activities or against other types of income such as portfolio investment income. * * *

H. R. Rept. No. 103-111, at 612-613 (1993), 1993-3 C.B. 1, 188-189.

[10]Sec. 469(c)(7)(B) provides in part:

This paragraph shall apply to a taxpayer for a taxable year if--

(continued...)

Section 469(c)(7)(D)(i) provides a special rule for determining whether a closely held C corporation meets the requirements of section 469(c)(7)(B):

> In the case of a closely held C corporation, the requirements of subparagraph (B) shall be treated as met for any taxable year if more than 50 percent of the gross receipts of such corporation for such taxable year are derived from real property trades or businesses in which the corporation materially participates.

Thus, the determination of whether a closely held C corporation meets the requirements of section 469(c)(7)(B) does not involve the one-half-of-personal-services test and the 750-hour test.

The requirements of section 469(c)(7)(B) can be met only by a taxpayer who materially participates in a real-property trade or business. This is because the one-half-of-personal-services test, the 750-hour test, and the special rule for closely held C corporations all presuppose that the taxpayer materially participates in real-property trades or businesses. Sec. 469(c)(7)(B)(i) and (ii); see sec. 469(c)(7)(D); see also sec. 1.469-9(c)(3), Income Tax Regs.

---

[10](...continued)

    (i) more than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and

    (ii) such taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates.

The term "real property trade or business" is defined as any real-property development, redevelopment, construction, reconstruction, acquisition, conversion, rental, operation, management, leasing, or brokerage trade or business. Sec. 469(c)(7)(C).

Regulatory guidance regarding the section 469(c)(7) exception is found in section 1.469-9, Income Tax Regs. This regulation states that only a "qualifying taxpayer" falls within the exception. Sec. 1.469-9(e)(1), Income Tax Regs. ("Section 469(c)(2) does not apply to any rental real estate activity of a taxpayer for a taxable year in which the taxpayer is a qualifying taxpayer[.]"). The term "qualifying taxpayer" is defined by the regulation as "a taxpayer that owns at least one interest in rental real estate and meets the requirements of paragraph (c) of this section." Sec. 1.469-9(b)(6), Income Tax Regs. Section 1.469-9(c), Income Tax Regs. (the paragraph (c) provision referred to in the quotation above) provides: "(1) In general.--A qualifying taxpayer must meet the requirements of section 469(c)(7)(B)." Thus, to be a "qualifying taxpayer" within the meaning of the regulation a taxpayer must own at least one interest in rental real estate and satisfy the requirements of section 469(c)(7)(B). Two other aspects of the regulation are of note. First, section 1.469-9(b)(4), Income Tax Regs., provides, in part, that "[p]ersonal services means any work performed by an individual in connection

with a trade or business." This is an interpretation of the term "personal services" used in the first test of section 469(c)(7)(B). Second, section 1.469-9(c)(2), Income Tax Regs., provides that "[a] closely held C corporation meets the requirements of paragraph (c)(1) of this section by satisfying the requirements of section 469(c)(7)(D)(i)."

Section 469(h) provides that for the purposes of section 469 a taxpayer is treated as materially participating in an activity only if the taxpayer is involved in the operation of the activity on a basis which is regular, continuous, and substantial. The test in section 469(h) has two functions. First, it is used to determine whether a particular activity is a passive activity. See sec. 469(c)(1) (defining passive activity as an activity, involving the conduct of a trade or business, in which the taxpayer does not materially participate). Second, it is used to determine whether a taxpayer materially participates in real-property trades or businesses. See sec. 469(c)(7)(B)(i) and (ii). Thus, a taxpayer is treated as materially participating in real-property trades or businesses if the taxpayer is involved in the operation of real-property trades or businesses on a basis which is regular, continuous, and substantial.

a. Can a trust qualify for the section 469(c)(7) exception?

i. The IRS's arguments

For the section 469(c)(7) exception to apply, there must be "personal services performed * * * by the taxpayer". Sec. 469(c)(7)(B)(i). Because "[p]ersonal services" are defined by regulation as "work performed by an individual in connection with a trade or business", the IRS contends that a trust cannot perform personal services. See sec. 1.469-9(b)(4), Income Tax Regs. Therefore, the IRS contends, a trust cannot qualify for the section 469(c)(7) exception.

The IRS asserts that the legislative history of section 469(c)(7) supports its view that Congress did not intend the section 469(c)(7) exception to apply to trusts. In describing the provision in the bill that would be adopted by the House, and enacted by Congress in amended form as section 469(c)(7), the report of the House Ways and Means Committee stated that the provision "applies to individuals and closely held C corporations." H.R. Rept. No. 103-111, at 614 (1993), 1993-3 C.B. 167, 190. The report further stated that an "individual taxpayer" meets the requirements of the exception "if more than half of the personal services the taxpayer performs in a trade or business are in real property trades or businesses in which he materially participates." Id. (The bill adopted by

the House had provided that the section 469(c)(7) exception was applicable "if more than one-half of the personal services performed in trades or businesses by the taxpayer * * * are performed in real property trades or businesses in which the taxpayer materially participates." H.R. 2264, 103d Cong., sec. 14143 (1993). The bill did not yet include the 750-hour test now codified in section 469(c)(7)(B)(ii).) The report also stated that a closely held C corporation meets the requirements of the section 469(c)(7) exception "if more than 50 percent of its gross receipts for the taxable year are derived from real property trades or businesses in which the corporation materially participates (within the meaning of sec. 469(h)(4))." H.R. Rept. No. 103-111, supra at 614, 1993-3 C.B. at 190. The report did not describe how any class of taxpayer other than an individual or a closely held C corporation meets the requirements of the exception. Id. The report of the conference committee, also describing the bill adopted by the House, similarly stated that an "individual taxpayer" meets the requirements of the exception "if more than half of the personal services the taxpayer performs in trades or businesses during the taxable year are in real property trades or businesses in which he materially participates." H.R. Conf. Rept. No. 103-213, at 546 (1993), 1993-3 C.B. 393, 424. The conference report further stated that a closely held C corporation meets the requirements of the exception "if more than 50 percent of its gross receipts for the

taxable year are derived from real property trades or businesses in which the corporation materially participates." Id. The conference report also discussed the final version of the bill. Id. at 547, 1993-3 C.B. at 425. It described the section 469(c)(7) exception thus:

> The conference agreement follows the House bill, with a modification. Under the conference agreement, an individual taxpayer meets the eligibility requirements if (1) more than half of the personal services the taxpayer performs in trades or businesses during the taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and (2) such taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates. * * *

Id.

####       ii.    Analysis

The IRS argues that a trust is incapable of performing "personal services" because the regulation defines "personal services" to mean "any work performed by an individual in connection with a trade or business". Sec. 1.469-9(b)(4), Income Tax Regs. We reject the IRS's argument. A trust is an arrangement whereby trustees manage assets for the trust's beneficiaries. 1 Restatement, Trusts 3d, sec. 2 (2003) (a trust "is a fiduciary relationship with respect to property, * * * subjecting the person who holds title to the property to duties to deal with it for the benefit of" others); see also sec. 301.7701-4(a), Proced. & Admin. Regs. ("In

general, the term 'trust' as used in the Internal Revenue Code refers to an arrangement created either by will or by an inter vivos declaration whereby trustees take title to property for the purpose of protecting or conserving it for the beneficiaries under the ordinary rules applied in chancery or probate courts."). If the trustees are individuals, and they work on a trade or business as part of their trustee duties, their work can be considered "work performed by an individual in connection with a trade or business." Sec. 1.469-9(b)(4), Income Tax Regs. We conclude that a trust is capable of performing personal services and therefore can satisfy the section 469(c)(7) exception.

Indeed, if Congress had wanted to exclude trusts from the section 469(c)(7) exception, it could have done so explicitly by limiting the exception to "any natural person". In section 469(i), the Internal Revenue Code does exactly that. Section 469(i) grants a $25,000 allowance to "any natural person" who fulfills certain requirements. That Congress did not use the phrase "natural person" but instead used the word "taxpayer" in section 469(c)(7) suggests that Congress did not intend to exclude trusts from the section 469(c)(7) exception, despite what the IRS argues here.

We need not address the trust's arguments regarding the regulation, which are that:

(1)     the word "individual" in the regulation should be interpreted to include a trust, and

(2)     in the alternative, even if the word "individual" does not include a trust, then the regulation is inapplicable to taxpayers that are trusts.

We now turn to the legislative history of the section 469(c)(7) exception, which the IRS contends shows that trusts cannot qualify for that exception.  The Ways and Means Committee report states that the section 469(c)(7) exception applies to individuals and closely held C corporations.  H.R. Rept. No. 103-111, supra at 614, 1993-3 C.B. at 190.  The report does not say that the exception applies only to individuals and closely held C corporations.  Therefore, the report does not compel the conclusion that only individuals and closely held C corporations can qualify for the section 469(c)(7) exception.

The legislative history states that an individual meets the requirements of section 469(c)(7) by meeting the one-half-of-personal-services test and, in discussing the final version of the legislation, the 750-hour test.  Id.; H.R. Rept. No. 103-213, supra at 546, 1993-3 C.B. at 424.   It is true that an individual falls within the section 469(c)(7) exception by meeting the two tests.  But this does not mean that other types of taxpayers cannot fall within the exception.

b.     Does the trust qualify for the section 469(c)(7) exception?

The IRS's fallback position is that even if some trusts can qualify for the section 469(c)(7) exception, the trust does not qualify because it did not materially participate in real-property trades or businesses.  The IRS concedes that the trust's real-estate operations qualify as real property trades or businesses.  Therefore the question to be resolved is whether the trust materially participated in its real-estate operations.  We hold that it did so.

Section 469(h) supplies the definition of what it means to materially participate in an activity.  By that definition, a taxpayer is treated as materially participating in an activity only if the taxpayer is involved in the operations of the activity on a basis which is regular, continuous, and substantial.  Sec. 469(h).  Interpreting section 469(h), the Department of the Treasury has promulgated regulations for determining whether taxpayers who are individuals materially participate in an activity.  See sec. 1.469-5T(a), (b), (c), and (d), Temporary Income Tax Regs., 53 Fed. Reg. 5725 (Feb. 25, 1988).  Section 469(h)(4) provides a method for determining whether certain types of corporations[11] have met the

---

[11]The IRS does not take the position that the trust should be treated as a corporation.  See sec. 301.7701-4(b), Proced. & Admin. Regs. (business trusts, defined as devices created by beneficiaries to carry on profit-making businesses, are to be treated for federal tax law purposes as corporations or partnerships).

tests for material participation.  The statute does not provide a method for determining how a trust may materially participate in an activity, and no regulations have yet been promulgated for taxpayers that are trusts.  See sec. 1.469-5T(g), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988) (reserving a place for a regulation to be titled "Material participation of trusts and estates").  Therefore, we must make the determination of whether a trust materially participates in an activity in the absence of regulatory guidance.[12]

The IRS argues that in determining whether a trust is materially participating in an activity, only the activities of the trustees can be considered and the activities of that trust's employees must be disregarded.  In support, the IRS cites S. Rept. No. 99-313, at 735 (1986), 1986-3 C.B. (Vol. 3) 1, 735, which states that a trust "is treated as materially participating in an activity * * * if an executor

---

[12]A number of commentators have argued that there is a need for a regulation that resolves questions regarding material participation of trusts and generally coordinates the passive-activity-loss rules of sec. 469 with the rules on taxation of trusts in subch. J.  See, e.g., 1 Byrle K. Abbin, David K. Carlson, and Mark L. Vorsatz, Income Taxation of Fiduciaries and Beneficiaries, sec. 801, at 8003 to 8004 (2012 ed.) ("Section 469 does not easily comport with subchapter J. To date no regulatory explanation has been forthcoming * * * [on questions including] where and how material participation is measured[.]"); M. Carr Ferguson, James J. Freeland, and Mark L. Ascher, Federal Income Taxation of Estates, Trusts, and Beneficiaries, para. 8.01, at 8-1 to 8-8 (3d ed. 2003); Leo L. Schmolka, "Passive Activity Losses, Trusts, and Estates: The Regulations (If I Were King)", 58 Tax L. Rev. 191 (2005).

or fiduciary, in his capacity as such, is so participating." The Senate committee report also stated that "the activities of * * * [employees] are not attributed to the taxpayer".[13]

On the basis of these legal principles, the IRS would have us ignore the activities of the trust's non-trustee employees.[14] Additionally, the IRS would have us ignore the activities of the three trustees who are employees of Holiday Enterprises, LLC. It reasons that the activities of these three trustees should be considered the activities of employees and not fiduciaries because (1) the trustees performed their activities as employees of Holiday Enterprises, LLC, and (2) it is impossible to disaggregate the activities they performed as employees of Holiday Enterprises, LLC, and the activities they performed as trustees.

---

[13]The Senate committee report stated:

> The fact that a taxpayer utilizes employees or contract services to perform daily functions in running the business does not prevent such taxpayer from qualifying as materially participating. However, the activities of such agents are not attributed to the taxpayer, and the taxpayer must still personally perform sufficient services to establish material participation.

S. Rept. No. 99-313, at 735 (1986), 1986-3 C.B. (Vol. 3) 1, 735.

[14]The IRS disagrees with Carter Trust v. United States, 256 F. Supp. 2d 536, 541 (N.D. Tex. 2003), which held that the activities of the trust's non-trustee employees (and of the trustee) are considered in determining whether the trust materially participated in ranching activity.

If the Court adopts all these arguments made by the IRS, then it should ignore the activities of the 20 or so non-trustee employees and the 3 trustee-employees (Paul V. Aragona, Frank S. Aragona, and Annette Aragona Moran). This would leave only the relatively insignificant activities of the trustees who are not employees (Salvatore S. Aragona, a dentist, Anthony F. Aragona, who is disabled and unable to work, and Charles E. Turnbull, an outside attorney who is the independent trustee).

Even if the activities of the trust's non-trustee employees should be disregarded,[15] the activities of the trustees--including their activities as employees of Holiday Enterprises, LLC--should be considered in determining whether the trust materially participated in its real-estate operations. The trustees were required by Michigan statutory law to administer the trust solely in the interests of the trust beneficiaries, because trustees have a duty to act as a prudent person would in dealing with the property of another, i.e., a beneficiary. Mich. Comp. Laws sec. 700.7302 (2001) (before amendment by 2009 Mich. Pub. Acts No. 46); see also In re Estate of Butterfield, 341 N.W.2d 453, 459 (Mich. 1983) (construing Mich. Comp. Laws sec. 700.813 (1979), a statute in effect from 1979 to 2000 that

[15]We need not and do not decide whether the activities of the trust's non-trustee employees should be disregarded.

was a similarly-worded predecessor to Mich. Comp. Laws sec. 700.7302).

Trustees are not relieved of their duties of loyalty to beneficiaries by conducting

activities through a corporation wholly owned by the trust.  Cf. In re Estate of

Butterfield, 341 N.W.2d at 457 ("Trustees who also happen to be directors of the

corporation which is owned or controlled by the trust cannot insulate themselves

from probate scrutiny [i.e., duties imposed on trustees by Michigan courts] under

the guise of calling themselves corporate directors who are exercising their

business judgment concerning matters of corporate policy.").  Therefore their

activities as employees of Holiday Enterprises, LLC, should be considered in

determining whether the trust materially participated in its real-estate operations.[16]

Considering the activities of all six trustees in their roles as trustees and as

employees of Holiday Enterprises, LLC, the trust materially participated in its

real-estate operations.  Three of the trustees participated in the trust's real-estate

---

[16]We need not consider the effect of sec. 469(c)(7)(D)(ii), which provides that for purposes of sec. 469(c)(7)(B) personal services performed as an employee are generally not treated as performed in real-property trades or businesses. This rule has no application to the resolution of this case because, as we explain infra, the IRS has confined its challenges to the trust's qualification for sec. 469(c)(7) treatment to two challenges:  (1) that trusts are categorically barred from sec. 469(c)(7) treatment, and (2) the trust did not materially participate in real-property trades or businesses.  Thus, we need not, and do not, determine how many hours of personal services were performed by the trust in real-property trades or businesses. We also note that the IRS does not cite sec. 469(c)(7)(D)(ii) in its brief.

operations full time.  The trust's real-estate operations were substantial.  The trust had practically no other types of operations.  The trustees handled practically no other businesses on behalf of the trust.  The IRS argues that because Paul V. Aragona and Frank S. Aragona had minority ownership interests in all of the entities through which the trust operated real-estate holding and real-estate development projects and because they had minority interests in some of the entities through which the trust operated its rental real-estate business, some of these two trustees' efforts in managing the jointly held entities are attributable to their personal portions of the businesses, not the trust's portion.  Despite two of the trustees' holding ownership interests, we are convinced that the trust materially participated in the trust's real-estate operations.  First, Frank S. and Paul V. Aragona's combined ownership interest in each entity was not a majority interest--for no entity did their combined ownership interest exceed 50%.  Second, Frank S. and Paul V. Aragona's combined ownership interest in each entity was never greater than the trust's ownership interest.  Third, Frank S. and Paul V. Aragona's interests as owners were generally compatible with the trust's goals-- they and the trust wanted the jointly held enterprises to succeed.  Fourth, Frank S. and Paul V. Aragona were involved in managing the day-to-day operations of the trust's various real-estate businesses.

We hold that the trust materially participated in real-property trades or businesses. For a taxpayer who has materially participated in real-property trades or businesses, the next steps in ascertaining whether the taxpayer benefits from the section 469(c)(7) exception are (1) to determine whether more than one-half of the personal services performed in trades or businesses by the taxpayer during the year are performed in real-property trades or businesses, and (2) to determine whether the taxpayer performed more than 750 hours of services during the year in the real-property trades or businesses. As to whether the trust qualifies for the section 469(c)(7) exception, however, the IRS has limited its arguments to the two arguments discussed above, namely (1) that trusts are categorically barred from qualifying under the section 469(c)(7) exception, and (2) that the trust did not materially participate in real-property trades or businesses. In the context of the arguments raised in this case, therefore, we hold the trust meets the section 469(c)(7) exception for the years at issue.

c.     Conclusion

Once it is determined that the trust qualifies under the section 469(c)(7) exception, and that therefore the trust's rental real-estate activities are not per se passive activities, a theoretical next step is to determine whether the trust materially participated in its rental real-estate activities. If the trust materially

participated in its rental real-estate activities, then its rental real-estate activities are not passive activities. If the trust did not materially participate in its rental real-estate activities, then its rental real-estate activities are passive activities.[17] The IRS argues only that the trust is not excepted by section 469(c)(7). It does not argue that--in the event that we determine that the trust is excepted by section 469(c)(7)--the trust did not materially participate in its rental real-estate activities. We hold that, in the context of the arguments presented in this case, the trust's rental real-estate activities are not passive activities.

2.    Are the fees that were paid by the trust to its trustees properly characterized as expenses of the trust's rental real-estate activities?

The notice of deficiency determined that the trust's rental real-estate activities were passive activities, a determination that if correct meant that all deductions related to the rental real-estate activities were passive-activity-loss deductions. The notice of deficiency treated the $302,400 in trustee fees as

---

[17]In determining whether a taxpayer who qualifies for the sec. 469(c)(7) exception has materially participated in a rental real-estate activity, each interest in rental real estate is treated as a separate rental real-estate activity unless the taxpayer has made an election under section 469(c)(7)(A). If the taxpayer has made such an election, then all interests in rental real estate are treated as a single rental real-estate activity. Sec. 469(c)(7)(A). Before the years at issue, the trust made an election under sec. 469(c)(7)(A)--an election that was binding for subsequent tax years, absent changed circumstances--to treat all of its interests in rental real estate as a single activity.

deductions other than passive-activity-loss deductions (and allowed the full deduction of $302,400).[18] The treatment of the $302,400 in trustee fees as deductions other than passive-activity-loss deductions assumes that the trustee fees were not expenses of the trust's rental real-estate activities. On brief, the IRS appears to defend this assumption: it apparently contends that the trustee fees were not the expenses of the trust's rental real-estate activities.[19] The trust appears to disagree with the assumption in the notice of deficiency: the trust apparently

[18]A passive-activity loss is generally defined as the amount, if any, by which the passive-activity deductions for the year exceed the passive-activity gross income for the tax year. Sec. 1.469-2T(b)(1), Temporary Income Tax Regs., 53 Fed. Reg. 5711 (Feb. 25, 1988). Passive-activity gross income is generally all items of gross income from a passive activity. Sec. 1.469-2T(c), Temporary Income Tax Regs., supra. A passive-activity deduction is generally defined as a deduction arising in connection with the conduct of a passive activity. Sec. 1.469-2T(d)(1), Temporary Income Tax Regs., 53 Fed. Reg. 5716 (Feb. 25, 1988).

[19]In its brief, the IRS frames the issue of proper characterization of the trustee fees as: "Whether petitioner should have reported trustee fee expenses on the front of its U.S. Income Tax Return for Estates and Trusts, Form 1041, or on the Schedule E, for the 2005 and 2006 years." It also frames the issue as: "Trustee Fees Are An Expense Of The Trust and not [Holiday Enterprises, LLC]." Both phrasings appear to be an obscure reference to the notice of deficiency's assumption that the trustee fees are not the expenses of the trust's rental real-estate activity.

contends that the trustee fees were the expenses of the trust's rental real-estate activities.[20]

The question of whether the trustee fees were the expenses of the trust's rental real-estate activities is relevant only if the trust's rental real-estate activities are passive activities. Contrary to the notice of deficiency, we hold that the trust's rental real-estate activities were not passive activities. See supra part 1.c. Because of this holding, the losses associated with the trust's rental real-estate activities are not passive-activity-loss deductions. Therefore, it is unnecessary to decide whether the trustee fees were expenses of the trust's rental real-estate activity.

---

[20]In its reply brief, the trust argues that the trustee fees are "properly included in the determination of the Trust's losses from its real estate activities." Strictly speaking, however, the computations in the notice of deficiency assumed that the trustee fees were not the expenses of the trust's rental real-estate activities.

3. <u>Conclusion</u>

We have considered all of the arguments the parties have made, and to the extent that we have not discussed them, we find them to be irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Tax Ct. R. Pract. & Proc. 155</u>.
